# IN THE COURT OF APPEALS OF TENNESSEE,
## AT JACKSON
_____

| | | |
|---|---|---|
| **MANUFACTURERS CONSOLIDATION SERVICE, INC.,** | ) | Shelby County Circuit Court No. 89341-2 T.D. |
| Plaintiff/Appellant, | ) | |
| **And** | ) | C.A. No. W1998-00889-COA-R3-CV W1998-00882-COA-R9-CV |
| **C. O. TURNER, III**, | ) | |
| Intervening Plaintiff/Appellant, | ) | |
| VS. | ) | |
| **RICK RODELL, CORNERSTONE SYSTEMS, INC., TIM CLAY, PAT NIEMAN, JERRY RICE, BRUCE HALLMANN, JACK BILLINGSLEY, JIM CHALTAS, GREGG MITCHELL, and ANGIE TAYLOR**, | ) | |
| Defendants/Appellees, | ) | |
| **And** | ) | |
| **RICARDO FERNANDEZ, GUY WALLACE and LARRY PRITCHETT**, | ) | |
| Defendants/Appellants. | ) | |

**FILED**

**March 10, 2000**

**Cecil Crowson, Jr.
Appellate Court Clerk**

_____

From the Circuit Court of Shelby County at Memphis.
**Honorable James F. Russell, Judge**

**Bruce S. Kramer**,
**Jeffrey C. Smith**,
BOROD & KRAMER, P.C., Memphis, Tennessee
Attorneys for Plaintiff/Appellant Manufacturers Consolidation Service, Inc., and Intervening Plaintiff/Appellant C. O. Turner, III.

**J. Alan Hanover**,
**James R. Newsom, III**,
HANOVER, WALSH, JALENAK & BLAIR, PLLC, Memphis, Tennessee
Attorneys for Defendants/Appellants Ricardo Fernandez, Guy Wallace and Larry Pritchett and for Defendants/Appellees Rick Rodell, Cornerstone Systems, Inc., Tim Clay, Pat Nieman, Jerry Rice, Bruce Hallmann, Jack Billingsley, Jim Chaltas, Gregg Mitchell and Angie Taylor.

OPINION FILED:

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED**

**FARMER, J.**

**HIGHERS, J.**: (Concurs)
**LILLARD, J.**: (Concurs)

In this consolidated appeal, the parties ask this court to review three separate orders of the trial court. Plaintiff Manufacturers Consolidation Service, Inc. (MCS), appeals the trial court's order dismissing its claims against Rick Rodell, Cornerstone Systems, Inc., and other named Defendants who are former employees of MCS. In the same order, the trial court dismissed the claims of Intervening Plaintiff C.O. Turner, III, against Defendant Rick Rodell, and Turner has appealed this order, as well as a later order of the trial court which granted Rodell's motion for summary judgment on a counterclaim against Turner. Finally, three of the individual Defendants, Ricardo Fernandez, Guy Wallace, and Larry Pritchett, appeal the trial court's order denying their motions to dismiss for lack of personal jurisdiction. We reverse the trial court's order of dismissal to the extent that it dismissed MCS's claims against the Defendants, and we reverse the trial court's order granting Rodell's motion for summary judgment against Turner; however, we affirm the trial court's orders in all other respects.

The present proceedings began in August 1997 when MCS filed a multi-count complaint against the Defendants alleging various business torts. Inasmuch as the trial court ultimately dismissed MCS's complaint without addressing its merits, for purposes of this appeal, we will accept as true most of the complaint's allegations.[1]

In its complaint, MCS described itself as "an intermodal marketing company which arranges intermodal transportation services for shippers of full trailerloads of cargo from point of origin to point of delivery." MCS contracts with railroads to haul the cargo over long distances, and it contracts with over-the-road and local trucking companies to deliver cargo to, and pick up cargo from, rail ramps. MCS is a Tennessee corporation, and its principal place of business is in Memphis.

Prior to the dispute that precipitated this litigation, Defendant Rick Rodell was the president and fifty percent (50%) shareholder of MCS. As the result of a previous lawsuit brought by Intervening Plaintiff C.O. Turner, III, to enforce a contract for the sale of stock, Rodell sold his 50% interest in MCS to Turner in April 1997. In connection with the sale,

---

[1]As hereinafter explained, we will accept as true the complaint's allegations unless they were specifically refuted by the affidavits submitted in support of the individual Defendants' motions to dismiss for lack of personal jurisdiction.

Turner, on behalf of MCS, and Rodell executed a management contract pursuant to which Rodell agreed to perform management consulting services for MCS for an eight-year term. MCS agreed to pay Rodell a total of $2 million under the contract at the rate of $250,000 per year. In addition, Turner signed a promissory note in his individual capacity promising to pay Rodell the sum of $1 million over a five-year period. The promissory note specified that the first installment of $100,000 would be due on April 14, 1998, the one-year anniversary of the stock sale. After the sale, Turner became the president and sole shareholder of MCS.

Approximately one week after the sale was consummated, Rodell incorporated a new company, Cornerstone Systems, Inc., and he became its president. Like MCS, Cornerstone is an intermodal marketing company based in Memphis, Tennessee.

MCS's complaint asserted causes of action against the Defendants for misappropriation of trade secrets and unfair trade practices (count I), procurement of breach of contract (count II), intentional interference with business relationship (count III), civil conspiracy (count IV), and breach of fiduciary duty (count V). In addition, the complaint asserted claims for defamation (count VI) against some of the Defendants and a claim for breach of management contract (count VII) against Rodell.

In support of these claims, the complaint alleged that, both prior and subsequent to the closing of the sale of Rodell's MCS stock to Turner, Rodell and the other Defendants solicited MCS employees to leave MCS and to work with Rodell and Cornerstone. According to the complaint, the Defendants deliberately set out to recruit many of MCS's key operations, sales, and administrative personnel. To substantiate these allegations, the complaint asserted that on June 16, 1997, Larry Pritchett, Ricardo Fernandez, and all of the employees in MCS's Chicago, Illinois, office resigned *en masse*. The complaint further asserted that on June 17 and 18, 1997, Guy Wallace and all of the employees in MCS's Portsmouth, Virginia, office resigned *en masse*. The resigning employees sent similar letters of resignation to MCS's corporate office in Memphis. At the time the complaint was filed, all of Cornerstone's employees were former MCS employees.

The complaint further alleged that the Defendants, using their knowledge of MCS's contracts and business relationships, solicited MCS's customers to terminate their contracts and business relationships with MCS and to enter into contractual and business relationships with Cornerstone. According to the complaint, the Defendants created confusion as to the source of services provided by both MCS and Cornerstone, at times representing that MCS was changing its name to Cornerstone. The complaint additionally asserted several defamation claims, including one alleging that Defendant Ricardo Fernandez stated to Mountain Intermodal that "MCS was going under" and that Fernandez was going with a new company. The complaint alleged that all of the Defendants engaged in a civil conspiracy to misappropriate MCS's confidential and/or proprietary information, to engage in unfair trade practices, and to destroy MCS's business by inducing the breach of existing contracts and business relationships between MCS and its key employees, customers, carriers, and vendors. The complaint claimed that these and other actions by the Defendants constituted breaches of their duties of loyalty to MCS.

Three of the Defendants, Ricardo Fernandez, Guy Wallace, and Larry Pritchett, responded to MCS's complaint by filing motions to dismiss for lack of personal jurisdiction. In support of their respective motions to dismiss, the three Defendants submitted virtually identical affidavits that contained the following statements: that, prior to June 1997, the Defendants were employed by MCS on an at-will basis; that they never executed any sort of noncompetition or confidentiality agreements; that they carried out all of their responsibilities for MCS in their respective home states; that they were not required to visit the state of Tennessee or to work in Tennessee as part of their responsibilities for MCS; that they, in fact, did not visit or work in Tennessee as part of their responsibilities for MCS; that they terminated their respective relationships with MCS in June 1997 of their own free wills; that they were not induced to leave MCS by Rodell or Cornerstone; and that, to the contrary, they initiated contact with Rodell regarding possible employment opportunities. The Defendants' affidavits concluded by denying that they were disloyal to MCS and, in Fernandez's case, by further denying that he had defamed MCS.

The trial court denied the three Defendants' motions to dismiss. Subsequently, the trial court and this court granted the Defendants' application for permission to pursue an

interlocutory appeal before this court. *See* Tenn. R. App. P. 9. In its order granting permission to appeal, the trial court explained why it denied the Defendants' motions to dismiss:

> [MCS] urges the Court to find that the jury could find that Movants, together with the other defendants herein, participated in a civil conspiracy to do harm to [MCS], a Tennessee corporation, each Movant having acted in his own state of residence to do so. Part of Movants' alleged activity had to do with leaving employment with one Tennessee corporation and taking employment with another Tennessee corporation in direct competition and in an effort to pirate the business of [MCS]. The Court agrees that these facts are sufficient to support [MCS's] contention that minimum contacts with the forum state do exist, as is constitutionally required. . . .
>
> . . . .
>
> . . . Among those acts, [MCS] claims that Movants impermissibly solicited then current employees of [MCS] who worked in the same offices as they did to terminate their employment with [MCS] to work for Defendant Cornerstone, resulting in the *en masse* resignations of the entire Chicago, Illinois and Portsmouth, Virginia office[s] of [MCS] and the transmission, via facsimile, to [MCS's] corporate office in Tennessee of notices of resignation by employees from said offices. . . .
>
> . . . The Complaint does not allege that any of the complained of acts generally attributed to all defendants occurred in the State of Tennessee insofar as the Movants are concerned, but the Court believes that such general allegations are sufficient among other factors . . . to establish the "minimum contacts" necessary to provide this Court with jurisdiction over Movants.

In April 1998, C.O. Turner, III, filed a motion for permission to intervene in this lawsuit. In his proposed complaint, which named only Rick Rodell as a defendant, Turner sought a declaratory judgment that the $1 million promissory note signed by him in connection with his purchase of Rodell's interest in MCS was unenforceable because of a lack of consideration. Specifically, Turner contended that the promissory note lacked consideration because Turner did not receive a personal benefit in exchange for his execution of the promissory note. In his proposed complaint, Turner also asked the trial court to enjoin Rodell "from commencing or prosecuting any other action regarding the payment of the Promissory Note." When he filed the motion to intervene, Turner deposited the sum of $100,000 with the court clerk, the amount of the first installment due under the promissory note. The trial court entered an order directing the court clerk to invest the funds in a bank account "at the highest prevailing

interest rate available for the benefit of Intervenor pending this litigation and further Order of the Court."

Rodell objected to Turner's motion to intervene on the ground, ***inter alia***, that "[t]he issue raised by the intervenor regarding the note [was] strictly between the intervenor and Rodell and [had] no place in this litigation involving many defendants unconnected with this transaction." Rodell also argued that Turner's deposit of the first installment with the court clerk did not constitute payment as required under the note, and Rodell stated his intention to declare the note in default and to accelerate payment due of the entire note.

Despite these objections, the trial court entered an order granting Turner's motion to intervene on June 8, 1998. In its order, the trial court indicated that it would grant Turner's request for preliminary injunctive relief upon his posting a bond in an amount required by the court. To this end, the order enjoined Rodell from "commencing or prosecuting any other action regarding the payment of the Promissory Note dated April 14, 1997, which is the subject of the intervening complaint, pending resolution of the declaratory judgment complaint, upon the plaintiff posting a corporate bond in the amount of $1,600,000.00."

Turner subsequently filed his complaint for declaratory and injunctive relief against Rodell; however, Turner did not post the $1.6 million bond referenced in the trial court's June 8 order allowing intervention.

Rodell filed an answer to Turner's complaint and a counterclaim in which he contended that Turner had defaulted on the note. Rodell later filed a motion for summary judgment as to Turner's intervening complaint in which he argued, on various grounds, that the complaint should be dismissed on the merits.

On September 3, 1998, the trial court entered a supplemental order again granting Turner's motion to intervene. In its supplemental order, however, the trial court explained that the $1.6 million bond referenced in the court's June 1998 order was a condition precedent to allowing Turner to intervene in this action. Accordingly, the trial court ordered Turner to post

the required bond within ten days of entry of the supplemental order.

On September 15, 1998, when Turner still had not posted the $1.6 million bond, Rodell filed a Petition for *Scire Facias* and Citation for Contempt against Turner based upon his failure to post the bond. As a remedy for Turner's alleged contempt, Rodell asked the trial court to impose one of the punishments set forth in Tennessee Code Annotated sections 29-9-103[2] and 29-9-104[3] and/or to dismiss Turner's intervening complaint under the authority of Tennessee Rule of Civil Procedure 41.02.[4] Rodell also suggested that the trial court "dismiss the entire case," including MCS's complaint against the various Defendants, "[s]ince Turner is the sole

---

[2]Section 29-9-103 contains the following provisions:

> (a)     The punishment for contempt may be by fine or by imprisonment, or both.
>
> (b)     Where not otherwise specially provided, the circuit, chancery, and appellate courts are limited to a fine of fifty dollars ($50.00), and imprisonment not exceeding ten (10) days, and, except as provided in § 29-9-108, all other courts are limited to a fine of ten dollars ($10.00).

Tenn. Code Ann. § 29-9-103 (Supp. 1997).

[3]Section 29-9-104 contains the following provisions:

> (a)     If the contempt consists in an omission to perform an act which it is yet in the power of the person to perform, he may be imprisoned until he performs it.
>
> (b)     The person or if same be a corporation, then the said person or corporation can be separately fined, as authorized by law, for each day it is in contempt until it performs the act ordered by the court.

Tenn. Code Ann. § 29-9-104 (1980).

[4]As pertinent, rule 41.02 provides that

> (1)     For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant.
>
> . . . .
>
> (3)     Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this Rule 41, other than a dismissal for lack of
>
> jurisdiction or for improper venue or for lack of an indispensable party, operates as an adjudication upon the merits.

Tenn. R. Civ. P. 41.02.

stockholder of MCS."

On October 9, 1998, the trial court entered an order finding both of the Plaintiffs to be in contempt of court and, as sanctions, dismissing both Turner's intervening complaint and MCS's original complaint. Specifically, the trial court found

> that the Plaintiffs are in contempt of this Court for the failure of the plaintiff-intervenor, C.O. Turner III, who is also the sole stockholder of the plaintiff, [MCS], to make a bond in the proper form and manner in the amount of $1,600,000 as ordered by this Court by the orders entered June 8, 1998, and September 3, 1998, which bond was expressly ordered by the Court as a condition precedent for the intervention of [Turner], pursuant to Rules 24 and 65 of Tennessee Rules of Civil Procedure."

Citing rule 41.02 and the court's inherent authority to punish for contempt, the trial court dismissed MCS's complaint and Turner's intervening complaint "with prejudice on the merits" due to Turner's "willful contempt" and "failure to comply with the [court's] orders." Upon its express determination that there was "no just reason for delay," the trial court directed the entry of a final judgment as to MCS's and Turner's respective claims. *See* Tenn. R. Civ. P. 54.02. Both MCS and Turner timely appealed the trial court's order of dismissal.

After the trial court entered its order of dismissal, Rodell amended the motion for summary judgment in which he previously had asked the trial court to dismiss Turner's intervening complaint on the merits. In his amended motion, Rodell asked the trial court to grant the additional relief of entering summary judgment in his favor on his counterclaim against Turner.

In December 1998, the trial court finally disposed of all the claims in this action when it entered summary judgment in favor of Rodell on his counterclaim on the note. The trial court awarded Rodell the principal amount of $1 million, plus interest and attorney's fees. Turner again filed a notice of appeal, this time referencing the summary judgment entered in favor of Rodell. For purposes of hearing, this court consolidated the parties' appeals.

### I. *Order Denying Three Defendants' Motions to Dismiss for Lack of Personal Jurisdiction*

On appeal, Defendants Fernandez, Wallace, and Pritchett contend that the trial court erred in denying their motions to dismiss because they lack sufficient contacts with the state of Tennessee to support the trial court's exercise of personal jurisdiction over them. In support of this contention, the Defendants cite the unrefuted assertions contained in their affidavits, specifically, that they had at-will relationships with MCS, that they performed all of their work for MCS in their respective states of residence, that they performed no work in the state of Tennessee, and that they had not visited the state of Tennessee. The Defendants further contend that the trial court erred in finding jurisdiction based upon the conspiracy theory of jurisdiction because this doctrine has not been, and should not be, embraced by the courts of this state.

The plaintiff in an action bears the burden of establishing a *prima facie* case that exercising personal jurisdiction over the defendant is proper. *Davis Kidd Booksellers, Inc. v. Day-Impex, Ltd.*, 832 S.W.2d 572, 577 (Tenn. Ct. App. 1992); *accord CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1261-62 (6th Cir. 1996); *Market/Media Research, Inc. v. Union-Tribune Publ'g Co.*, 951 F.2d 102, 104 (6th Cir. 1991), *cert. denied*, 506 U.S. 824 (1992); *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991); *Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989). If the defendant challenges the trial court's personal jurisdiction over him by filing a properly supported motion to dismiss, "the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen*, 935 F.2d at 1458; *accord Serras*, 875 F.2d at 1214.

In ruling on the defendant's motion to dismiss for lack of personal jurisdiction, however, the trial court is required to construe the pleadings and affidavits in the light most favorable to the plaintiff. *Chase Cavett Servs., Inc. v. Brandon Apparel Group, Inc.*, No. 02A01-9803-CH-00055, 1998 WL 846708, at *1 (Tenn. Ct. App. Dec. 7, 1998) (*no perm. app. filed*); *accord CompuServe*, 89 F.3d at 1262; *Market/Media Research*, 951 F.2d at 104; *Theunissen*, 935 F.2d at 1459; *Serras*, 875 F.2d at 1214. Under this standard, dismissal is

proper only if all of the specific facts alleged by the plaintiff collectively fail to state a *prima*

*facie* case for jurisdiction. *CompuServe*, 89 F.3d at 1262; *Market/Media Research*, 951 F.2d at

105; *Theunissen*, 935 F.2d at 1459.[5]

Tennessee's long-arm statute permits the courts of this state to exercise

jurisdiction upon, *inter alia*, "[a]ny basis not inconsistent with the constitution of this state or of

the United States." Tenn. Code Ann. §§ 20-2-214(a)(6), 20-2-225(2) (1994 & Supp. 1997).

When a state's long-arm statute authorizes the assertion of personal jurisdiction to the limits of

federal due process, as does Tennessee's long-arm statute, the issue becomes simply whether the

trial court's exercise of personal jurisdiction over the defendant meets due process requirements.

*Coblentz GMC/Freightliner, Inc. v. General Motors Corp.*, 724 F. Supp. 1364, 1368 (M.D. Ala.

1989), *aff'd*, 932 F.2d 977 (11th Cir. 1991).

Following the United States Supreme Court's lead, the Tennessee Supreme Court

has adopted the "minimum contacts" test for determining when the courts of this state may

exercise personal jurisdiction over a nonresident defendant. *Davis Kidd Booksellers, Inc. v.*

*Day-Impex, Ltd.*, 832 S.W.2d 572, 574-75 (Tenn. Ct. App. 1992) (citing *Masada Inv. Corp. v.*

*Allen*, 697 S.W.2d 332, 334 (Tenn. 1985)). In adopting this test, our supreme court explained

that

> due process requires that a non-resident defendant be subject to a
> judgment *in personam* only if he has minimum contacts with the
> forum such that "the maintenance of the suit does not offend

---

[5]When a motion to dismiss for lack of personal jurisdiction is decided upon the parties' pleadings and affidavits, as opposed to an evidentiary hearing, the procedure in many respects is similar to a summary judgment procedure. *See Byrd v. Hall*, 847 S.W.2d 208, 214-15 (Tenn. 1993) (holding that nonmoving party faced with properly supported motion for summary judgment may not rely upon allegations of his pleadings and, further, that trial judge ruling on motion for summary judgment must view evidence in favor of nonmoving party); *see also Radaszewski v. Telecom Corp.*, 981 F.2d 305, 310 (8th Cir. 1992) (noting similarities between analytical processes applied to motions to dismiss for lack of personal jurisdiction and motions for summary judgment), *cert. denied*, 508 U.S. 908 (1993). Our supreme court has stressed, however, that the two procedures should not be confused because, whereas a motion to dismiss for lack of jurisdiction is a motion in abatement, a motion for summary judgment is a motion in bar that goes to the merits of the action. *Nicholstone Book Bindery, Inc. v. Chelsea House Publishers*, 621 S.W.2d 560, 561 n.1 (Tenn. 1981), *cert. denied*, 455 U.S. 994 (1982); *see also Goff v. Hackett Stone Co.*, No. 98-7137, 1999 WL 397409, at *2 (10th Cir. 1999) (indicating that, whereas dismissal for lack of personal jurisdiction should be without prejudice, dismissal by summary judgment is with prejudice and may preclude subsequent action in another forum).

> 'traditional notions of fair play and substantial justice.;'"
> *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.
> Ct. 154, 158, 90 L. Ed. 95 (1945).  However, the absence of
> physical contacts will not defeat *in personam* jurisdiction where a
> commercial actor purposefully directs his activities toward citizens
> of the forum State and litigation results from injuries arising out of
> or relating to those activities.  *Burger King Corp. v. Rudzewicz*,
> [471 U.S. 462, 472], 105 S. Ct. 2174, 2182, 85 L. Ed. 2d 528
> (1985).  In such a case, "the defendant's conduct and connection
> with the forum State are such that he should reasonably anticipate
> being haled into court there."  *World-Wide Volkswagen Corp. v.
> Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 567, 62 L. Ed. 2d
> 490 (1980).

*Masada Inv. Corp. v. Allen*, 697 S.W.2d 332, 334 (Tenn. 1985).

At the time Fernandez, Wallace, and Pritchett sought permission to appeal the trial court's order denying their motions to dismiss, the appellate courts of this state had not specifically adopted the conspiracy theory of jurisdiction.  Although prior opinions of both this court and our supreme court had hinted at the viability of such a theory, the courts apparently had not been required to directly address the issue.  *See, e.g.*, *Budget Rent-A-Car of Knoxville, Inc. v. Car Servs., Inc.*, 469 S.W.2d 360, 361 (Tenn. 1971) (concluding that defendants were not subject to Tennessee court's personal jurisdiction because record contained nothing to establish any presence or activity in Tennessee by defendants or by anyone representing them incidental to alleged conspiracy on which suit was grounded); *Putnam v. Putnam*, No. 02A01-9511-CH-00250, 1996 WL 740807, at *3 (Tenn. Ct. App. Dec. 30, 1996) (*no perm. app. filed*) (concluding that defendant was not subject to Tennessee court's personal jurisdiction because alleged conspiracy occurred in Alabama).

After oral arguments were heard in this case, this court issued an opinion in which it specifically adopted the conspiracy theory of jurisdiction.  In *Chenault v. Walker*, No. 02A01-9812-CV-00340, slip op. at 14-15 (Tenn. Ct. App. Feb. 9, 2000), we concluded, as had courts in other jurisdictions,[6] that the exercise of personal jurisdiction pursuant to this theory

---

[6]*See, e.g.*, *United Phosphorus, Ltd. v. Angus Chem. Co.*, 43 F. Supp. 2d 904, 912-16 (N.D. Ill. 1999); *General Motors Corp. v. Lopez*, 948 F. Supp. 656, 664-66 (E.D. Mich. 1996); *Perry v. Kempton*, 864 F. Supp. 37, 39 (S.D. Ohio 1994); *Thompson Trading Ltd. v. Allied Lyons PLC*, 124 F.R.D. 534, 535-37 (D.R.I. 1989); *see also Hercules Inc. v. Leu Trust & Banking Ltd.*, 611 A.2d 476, 481-84 (Del. 1992), *cert. dismissed*, 507 U.S. 1025 (1993); *Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co.*, ___ So. 2d ___, 2000 WL 44051, at *2-*3 (Fla.

comported with constitutional due process requirements. In articulating the conspiracy theory of jurisdiction, we quoted extensively from the decision of a Maryland federal district court:

> [The conspiracy theory of jurisdiction] is based on two principles: (1) that the acts of one co-conspirator are attributable to all co-conspirators, *McLaughlin v. Copeland*, 435 F. Supp. 513, 530 (D. Md. 1977) ("McLaughlin"); and (2) that the constitutional requirement of minimum contacts between non-resident defendants and the forum can be met if there is a substantial connection between the forum and a conspiracy entered into by such defendants. *Vermont Castings, Inc. v. Evans Products Co.*, 510 F. Supp. 940, 944 (D. Vt. 1981). The conspiracy theory of jurisdiction as developed in the cases, holds that when several individuals (1) conspire to do something (2) that they could reasonably expect to have consequences in a particular forum, if one co-conspirator (3) who is subject to personal jurisdiction in the forum (4) commits overt acts in furtherance of the conspiracy, those acts are attributable to the other co-conspirators, who thus become subject to personal jurisdiction even if they have no other contacts with the forum. . . .
>
> . . . .
>
> However, in several cases in which the conspirator who committed the overt acts was a resident of the forum, courts have required only that "substantial acts" in furtherance of the conspiracy be committed in the forum. . . . While these courts did not address the point explicitly, the only reasonable interpretation of this standard is that the acts committed in furtherance of the conspiracy must be of a type that, if committed by the non-resident co-conspirators themselves, . . . would have provided a basis for subjecting the non-residents to personal jurisdiction under the forum's long-arm statute. If the overt acts do not meet this standard, it would be patently unfair to subject those non-residents to personal jurisdiction via the conspiracy theory, under which the non-residents' contacts with the forum are less direct.
>
> All this suggests a need for a simplified articulation of the conspiracy theory of jurisdiction. Under that doctrine, when
>
> (1)     two or more individuals conspire to do something
>
> (2)     that they could reasonably expect to lead to consequences in a particular forum, if
>
> (3)     one co-conspirator commits overt acts in furtherance of the conspiracy, and
>
> (4)     those acts are of a type which, if committed by a non-resident, would subject the non-resident to personal jurisdiction under the long-arm statute of the forum state,
>
> then those overt acts are attributable to the other co-conspirators,

2000); *Rudo v. Stubbs*, 472 S.E.2d 515, 516-18 (Ga. Ct. App. 1996); *Cameron v. Owens-Corning Fiberglas Corp.*, 695 N.E.2d 572, 577-79 (Ill. App. Ct.), *appeal denied*, 705 N.E.2d 434 (Ill. 1998), *cert. denied*, 119 S. Ct. 872 (1999).

who thus become subject to personal jurisdiction in the forum,
even if they have no direct contacts with the forum.

*Cawley v. Bloch*, 544 F. Supp. 133, 134-35 (D. Md. 1982) (citations and footnotes omitted),

*quoted in Chenault v. Walker*, No. 02A01-9812-CV-00340, slip op. at 14-15 (Tenn. Ct. App.

Feb. 9, 2000).

Viewing the assertions contained in the pleadings and affidavits in the light most

favorable to MCS, we hold that these assertions are sufficient to support the trial court's exercise

of jurisdiction over these Defendants pursuant to the conspiracy theory of jurisdiction. In its

complaint, MCS alleged that the Defendants, including Fernandez, Wallace, and Pritchett,

conspired to induce MCS's employees and customers to breach their existing contracts with

MCS and to form new contracts with Cornerstone. In doing so, the Defendants allegedly misled

customers by representing that MCS and Cornerstone were the same entity, and they allegedly

misappropriated MCS's confidential and/or proprietary information. If these allegations are true,

the Defendants reasonably could expect their actions to lead to consequences in the state of

Tennessee, inasmuch as both MCS and Cornerstone are Tennessee corporations having principal

places of business in Memphis.

Moreover, Defendant Rick Rodell allegedly directed and performed his part of the

conspiracy from his home state of Tennessee. In furtherance of the conspiracy, Rodell

incorporated Cornerstone Systems, Inc., in Tennessee, and, on behalf of his new corporation, he

recruited many of MCS's key employees, some of whom worked in MCS's Memphis office.

According to the complaint's allegations, Rodell and the other Defendants also induced all of

MCS's employees in both the Portsmouth, Virginia, office and the Chicago, Illinois, office to

resign *en masse* and to transmit their letters of resignation to MCS's corporate office in

Memphis. In our view, the overt acts allegedly committed by Rodell in furtherance of the

conspiracy would be sufficient to subject a nonresident to personal jurisdiction under this state's

long-arm statute. Accordingly, these acts may be attributed to the Defendants for purposes of

exercising personal jurisdiction over them.

On appeal, the Defendants suggest that this court's adoption of the conspiracy theory of jurisdiction represents a departure from traditional minimum contacts analysis. We disagree. As explained by the Supreme Court of Delaware when it adopted the conspiracy theory of jurisdiction,

> a defendant who has so voluntarily participated in a conspiracy with knowledge of its acts in or effects in the forum state can be said to have purposefully availed himself of the privilege of conducting activities in the forum state, thereby fairly invoking the benefits and burdens of its laws. . . . It can further be said that such participation is a substantial contact with the jurisdiction of a nature and quality that it is reasonable and fair to require the defendant to come and defend an action there. Additional contacts would of course make even more equitable the [exercise of] jurisdiction.

*Istituto Bancario Italiano SpA v. Hunter Eng'g Co.*, 449 A.2d 210, 225 (Del. 1982) (citation omitted).[7] The Court of Appeals of Georgia provided a similar rationale when it adopted the conspiracy theory of jurisdiction, explaining that

> [w]hen the purpose of a conspiracy is to commit an intentional tort against a Georgian, all of the coconspirators are purposefully directing their activities toward Georgia and should reasonably anticipate being haled into court here. . . . In this case, . . . the alleged conspiracy targeted a Georgia resident specifically. Thus, the nonresident conspirators purposefully directed their activities

---

[7]In attempting to formulate a workable standard of the conspiracy theory of jurisdiction, the Delaware court held that

> a conspirator who is absent from the forum state is subject to the jurisdiction of the court, assuming he is properly served under state law, if the plaintiff can make a factual showing that:
>
> (1)     a conspiracy to [commit a tort] existed;
>
> (2)     the defendant was a member of that conspiracy;
>
> (3)     a substantial act or substantial effect in furtherance of the conspiracy occurred in the forum state;
>
> (4)     the defendant knew or had reason to know of the act in the forum state or that acts outside the forum state would have an effect in the forum state; and
>
> (5)     the act in, or effect on, the forum state was a direct and foreseeable result of the conduct in furtherance of the conspiracy.

*Istituto Bancario Italiano*, 449 A.2d at 225.

> toward Georgia, and could reasonably expect to be haled into court here. Accordingly, the imputation to them of the instate acts of their coconspirator to satisfy the requirements of the Georgia Long Arm Statute is not precluded by due process concerns.

*Rudo v. Stubbs*, 472 S.E.2d 515, 517 (Ga. Ct. App. 1996) (citation and footnote omitted).

We conclude that the same rationale applies in the present case. If the allegations of MCS's complaint are true, the Defendants have conspired with a Tennessee resident to commit one or more intentional torts against a Tennessee corporation. One of the alleged conspirators, Rick Rodell, was a Tennessee resident and the president of a Tennessee corporation, Cornerstone Systems, Inc. The alleged conspiracy specifically targeted another Tennessee corporation, MCS. Under these circumstances, the nonresident conspirators, including Fernandez, Wallace, and Pritchett, have purposefully directed their activities toward Tennessee and should reasonably anticipate being haled into court here. Accordingly, due process concerns do not preclude the trial court from exercising personal jurisdiction over these Defendants.

We further note that, although they seek to minimize such contacts, the Defendants themselves have contacts with the state of Tennessee. The Defendants were employed by MCS, a Tennessee corporation. Although the events surrounding their resignations from MCS were disputed, the parties did not dispute that the Defendants resigned from MCS and immediately began working for another Tennessee corporation, Cornerstone. The Defendants acknowledged contacting Rodell, a Tennessee resident, about employment opportunities, and they sent copies of their resignation letters to MCS's corporate office in Memphis. Even if these contacts are insufficient, by themselves, to subject the Defendants to the trial court's jurisdiction, we conclude that these additional contacts weigh in favor of the trial court's decision to exercise jurisdiction over them.[8]

---

[8]The law is well-settled that a trial court may not exercise personal jurisdiction over a nonresident defendant merely because the defendant is employed by a company domiciled in the forum state. *Century Wrecker Corp. v. Hutchings*, 1990 WL 131423, at *2 (Tenn. Ct. App. Sept. 14, 1990) (*no perm. app. filed*) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)). Nevertheless, courts have recognized that such employment creates a significant contact which, when added to other contacts with the forum state, may support the exercise of personal jurisdiction over the nonresident defendant. *See Equifax Servs., Inc. v. Hitz*, 905 F.2d 1355,

Citing *Weller v. Cromwell Oil Co.*, 504 F.2d 927 (6th Cir. 1974), the Defendants insist that they were entitled to dismissal of the action against them based upon MCS's failure to respond to the affidavits that the Defendants filed in support of their motions to dismiss for lack of personal jurisdiction. In *Weller*, the court held that, where a motion to dismiss for lack of personal jurisdiction is filed and is supported by affidavits, the plaintiff may not rest upon the allegations of his complaint. Instead, the plaintiff must respond, by affidavit or otherwise, and "must set forth specific facts showing that the court has jurisdiction." *Weller*, 504 F.2d at 929-30. As pointed out by the Defendants, when presented with their motions to dismiss, MCS did not respond, by affidavit or otherwise, but instead chose to rely upon the allegations contained in its complaint.

Despite MCS's failure to respond, we hold that Fernandez, Wallace, and Pritchett were not entitled to dismissal of the action against them. We agree with the statement that, "in the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *Weller*, 504 F.2d at 930). The key to this statement of procedural law, however, is that the motion to dismiss must be "properly supported." *Id*. In ruling on a motion to dismiss for lack of personal jurisdiction, the trial court must presume that the complaint's allegations are true to the extent they are not contradicted by the parties' affidavits. *American Land Program, Inc. v. Bonaventura Uitgevers Maatschappij, N.V.*, 710 F.2d 1449, 1454 (10th Cir. 1983). In our view, therefore, a defendant's motion to dismiss is not "properly supported" by his affidavit unless the affidavit effectively negates the jurisdictional allegations of the plaintiff's complaint.

As we previously discussed, the Defendants' motions to dismiss in this case were supported by affidavits which asserted merely that the Defendants were employed by MCS on an at-will basis, that they never executed any sort of noncompetition or confidentiality agreements, that they carried out all of their responsibilities for MCS in their respective home states, that they were not required to visit the state of Tennessee or to work in Tennessee as part of their

---

1358-59 (10th Cir. 1990); *Shipley Co. v. Clark*, 728 F. Supp. 818, 822-23 (D. Mass. 1990); *see also ALTA Analytics, Inc. v. Muuss*, 75 F. Supp. 2d 773, 779 (S.D. Ohio 1999).

responsibilities for MCS, that they terminated their respective relationships with MCS of their own free wills, that they were not induced to leave MCS by Rick Rodell or Cornerstone, that they initiated contact with Rodell regarding possible employment opportunities, and, finally, that they had not been disloyal to MCS. Although the Defendants' affidavits emphasized their lack of physical contacts with the state of Tennessee, they did little to rebut many of the jurisdictional allegations of MCS's complaint. For example, the affidavits did not contradict the complaint's assertions that the Defendants conspired with Rodell to induce customers and other employees to terminate their relationships with MCS, nor did they deny that the *en masse* resignations of MCS's employees in Chicago and Portsmouth resulted from a common scheme.

Moreover, although the affidavits asserted that Rodell did not induce the Defendants to terminate their employment with MCS and that they, in fact, initiated contact with Rodell, such assertions are not necessarily inconsistent with the complaint's allegations that Rodell and the Defendants entered into a conspiracy to interfere with MCS's contracts and to misappropriate MCS's confidential and/or proprietary information. Although the Defendants claimed to have initiated contact with Rodell, for instance, they could later have entered into a conspiracy with Rodell based upon the conversations that occurred during their initial contacts. And, although their affidavits generally denied that the Defendants were disloyal to MCS, the affidavits did not address the complaint's allegations that the Defendants misappropriated MCS's confidential and/or proprietary information. Inasmuch as the Defendants' affidavits failed to effectively negate the jurisdictional allegations of MCS's complaint, MCS's decision to rest upon the allegations of its complaint was not fatal to its action against Fernandez, Wallace, and Pritchett.

We also reject the Defendants' argument that MCS's complaint failed to establish a *prima facie* case that jurisdiction existed because the complaint contained only generalized allegations of a conspiracy without including any specific factual allegations that these Defendants engaged in misconduct. We agree with the observation of one federal court when it stated that "a plaintiff should not be permitted to hale a defendant into court based only on a bald-faced, conclusory assertion of conspiracy with no supporting factual allegations." *Thompson Trading Ltd. v. Allied Lyons PLC*, 124 F.R.D. 534, 537 (D.R.I. 1989). The same

court also noted, however, that

> conspiracy is an activity which by its very nature is not done in the open for all to see. Since defendants are likely in control of any relevant evidence, it would be manifestly unfair to force plaintiff to plead specific facts proving particular conspiratorial acts prior to giving plaintiff the opportunity to conduct discovery.

*Id*.; *accord General Motors Corp. v. Lopez*, 948 F. Supp. 656, 664 (E.D. Mich. 1996) (indicating that "[t]otally unsupported conspiracy allegations do not support jurisdiction" but that, "[a]t the same time, it is not fair to require a plaintiff to plead specific facts proving conspiracy before discovery"), *quoted in Chenault v. Walker*, No. 02A01-9812-CV-00340, slip op. at 13 (Tenn. Ct. App. Feb. 9, 2000).

At this stage in the proceedings, a plaintiff need only plead sufficient factual allegations from which the existence of a conspiracy may be inferred. *Thompson Trading*, 124 F.R.D. at 536. After carefully reviewing the complaint in this case, we hold that MCS has pled sufficiently specific factual allegations to withstand the Defendants' motions to dismiss. *See id.* at 536-37.

## II. Order Dismissing MCS's and Turner's Complaints Due to Turner's Failure to Post Bond

We likewise affirm the dismissal of Turner's intervening complaint against Rodell. On appeal, Turner attacks the order of dismissal on several grounds. Turner first contends that the trial court improperly required him to post a $1.6 million bond as a condition to intervening in this action. Turner points out that the trial court's original order allowing him to intervene, dated June 8, 1998, required him to post the bond only as a condition to obtaining injunctive relief, not as a condition to intervening in the action. The trial court did not specify that the bond was a condition to intervening in the action until September 3, 1998, when the court entered its supplemental order. Turner contends that he effectively abandoned his claim for injunctive relief when he did not post the $1.6 million bond and that the trial court should not have continued to impose this requirement.

We conclude that these arguments are without merit. The trial court granted

Turner's motion to intervene pursuant to rule 24.02 of the Tennessee Rules of Civil Procedure, governing permissive intervention, which provides that,

> [u]pon timely application anyone may be permitted to intervene in an action: (1) when a statute confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. In exercising discretion the court shall consider whether or not the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Tenn. R. Civ. P. 24.02.

Under rule 24.02, the trial court may permit an applicant to intervene if the court determines that the applicant's claims and the underlying action have a common question of law or fact. **Ballard v. Herzke**, 924 S.W.2d 652, 658 (Tenn. 1996); Tenn. R. Civ. P. 24.02. A question of law is "[a]n issue which involves the application or interpretation of a law." **Black's Law Dictionary** 1122 (5th ed. 1979). A question of fact is "[a]n issue involving the resolution of a factual dispute." **Id**. As indicated by the language of rule 24.02, the decision to allow a permissive intervention is a matter entrusted to the trial court's discretion. **Ballard**, 924 S.W.2d at 658. Absent a showing that the trial court abused its discretion, this court will not reverse the trial court's decision. **Id**.; **accord Shelby County Deputy Sheriff's Ass'n v. Gilless**, 972 S.W.2d 683, 685 (Tenn. Ct. App. 1997).

As an initial matter, we are not convinced that Turner's motion to intervene even met the requirements for a permissive intervention because the motion failed to establish the existence of any questions of law or fact common to both Turner's claims and the underlying action. As we previously indicated, Turner's claims for declaratory and injunctive relief were premised on his argument that the $1 million promissory note signed by him in connection with his purchase of Rodell's interest in MCS lacked consideration because Turner did not receive any personal benefit in exchange for executing the note. Thus, Turner's claims presented the narrow question of whether the promissory note was unenforceable due to a lack of consideration. On the other hand, MCS's claims against the Defendants in the underlying action were premised on MCS's assertions that, both prior and subsequent to Rodell's sale of his interest in MCS to

Turner, Rodell and the other Defendants conspired to misappropriate MCS's confidential and/or proprietary information, to engage in unfair trade practices, and to destroy MCS's business by inducing the breach of existing contracts and business relationships between MCS and its key employees, customers, carriers, and vendors. A review of the complaints' allegations, therefore, fails to confirm that the intervening claims and the underlying action share any common questions of law or fact.

In support of his motion to intervene, Turner asserted that he executed the promissory note in connection with the transaction whereby Rodell sold his interest in MCS to Turner and that this transaction also was "the genesis of the present litigation." We recognize that the same transaction forms part of the factual background for both Turner's claims and the underlying action. If Rodell had not sold his interest in MCS to Turner, Rodell likely would not have established a new corporation that directly competed with MCS for its employees and customers. Nevertheless, the common fact of this transaction does not support intervention. For purposes of MCS's action against the Defendants, the transaction whereby Rodell sold his interest in MCS to Turner is not in dispute. What is in dispute is the conduct of Rodell and the other Defendants just prior and subsequent to the transaction. The transaction itself does not present any legal or factual question that needs to be resolved in the underlying action. In light of the tenuous relationship between Turner's claims and the underlying action, therefore, the trial court would have been justified in denying Turner's motion to intervene.

Inasmuch as the trial court had the discretion to deny Turner's motion to intervene altogether, we conclude that the trial court did not abuse its discretion in permitting Turner to intervene but, at the same time, imposing a condition on Turner's intervention. Although this issue apparently has not been addressed by the appellate courts of this state, our conclusion is supported by authorities interpreting the comparable federal rule on permissive intervention. *See* Fed. R. Civ. P. 24(b).[9] In *Beauregard, Inc. v. Sword Services LLC*, 107 F.3d 351 (5th Cir.

---

[9]The pertinent provisions of federal rule 24(b) are virtually identical to those of Tennessee rule 24.02. Rule 24(b) provides that

> [u]pon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's

1997), for example, the court noted that

> [i]t is undisputed that virtually any condition may be attached to a grant of permissive intervention. *See, e.g.*, *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424 (10th Cir. 1990)[, *cert. denied*, 498 U.S. 1073 (1991)]; *Fox v. Glickman Corp.*, 355 F.2d 161, 164 (2d Cir. 1965)[, *cert. denied*, 384 U.S. 960 (1966)]; Wright, Miller & Kane, *Federal Practice & Procedure: Civil 2d*, § 1913, § 1922 (1986) ("Since the court has discretion to refuse intervention altogether, it also may specify the conditions on which it will allow the applicant to become a party.").

*Beauregard*, 107 F.3d at 352 n.2.

Similarly, in *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370 (1987), Justice Brennan, in a concurring opinion, noted that

> [e]ven highly restrictive conditions may be appropriately placed on a permissive intervenor, because such a party has by definition neither a statutory right to intervene nor any interest at stake that the other parties will not adequately protect or that it could not adequately protect in another proceeding.

*Stringfellow*, 480 U.S. at 382 n.1 (Brennan, J., concurring) (citing Fed. R. Civ. P. 24(b)); *accord*

*Columbus-America Discovery Group v. Atlantic Mut. Ins. Co.*, 974 F.2d 450, 469 (4th Cir.

1992) ("When granting an application for permissive intervention, a federal district court is able

to impose almost any condition."), *cert. denied*, 507 U.S. 1000 (1993); *In re Discovery Zone*

*Sec. Litig.*, 181 F.R.D. 582, 601 (N.D. Ill. 1998) ("It is axiomatic that courts may put limitations

on a party's ability to intervene permissively under Rule 24(b)(2)."); *Lelsz v. Kavanagh*, 783 F.

Supp. 286, 292 (N.D. Tex. 1991) ("[A]n application for permissive intervention, unlike

intervention as of right, is addressed to the discretion of the court, and the court, accordingly,

may impose various conditions or restrictions on the scope of intervention."), *aff'd*, 983 F.2d

1061 (5th Cir.), *cert. denied*, 510 U.S. 906 (1993); *see also Meyer v. Meyer*, 842 S.W.2d 184,

---

> claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed. R. Civ. P. 24(b).

188 (Mo. Ct. App. 1992) ("A court may impose conditions on its grant of permissive intervention.").

In the present action, the trial court entered orders permitting Turner to intervene, but the court conditioned Turner's intervention upon his posting a $1.6 million bond. Inasmuch as Turner failed to meet the condition for his intervention, we hold that the trial court did not abuse its discretion in dismissing his complaint against Rodell. In reaching this conclusion, we stress that, although the trial court conditioned Turner's intervention on posting the $1.6 million bond, the court's action did not prevent Turner from pursuing his claims on the promissory note against Rodell. Turner could have filed a separate lawsuit challenging the enforceability of the promissory note. The trial court's ruling merely limited Turner's right to pursue such claims in the present action.

Turner also contends that the trial court erred in dismissing his intervening complaint based upon the court's finding that Turner was in contempt of court for failing to comply with the court's orders allowing intervention. Describing the trial court's dismissal of his complaint as a "punitive and unconditional" sanction, Turner first characterizes the proceeding which led to the dismissal of his intervening complaint as a criminal contempt action. Based upon this characterization, Turner then contends that the trial court's order of dismissal should be reversed because the trial court denied Turner the constitutional and procedural protections to which he was entitled in a criminal contempt action. Specifically, Turner contends that he was not given notice that he was being charged with criminal contempt as required by Tennessee Rule of Criminal Procedure 42(b). Turner further contends that the trial court erred in finding him in contempt because he attempted in good faith to comply with the order to post the bond and, thus, his failure to comply with the order was not willful.

We believe that these arguments improperly characterize the proceeding that led to the dismissal of Turner's intervening complaint as a criminal contempt action. The trial court dismissed Turner's complaint pursuant to rule 41.02 of the Tennessee Rules of Civil Procedure, which authorizes the court to dismiss a plaintiff's claim if he fails to prosecute the claim, to comply with the Rules of Civil Procedure, or to comply with any order of the court.

*Thompson v. Dickerson*, No. 02A01-9702-CV-00034, 1997 WL 437228, at *2 (Tenn. Ct. App. Aug. 1, 1997) (*no perm. app. filed*); *Kotil v. Hydra-Sports, Inc.*, No. 01A01-9305-CV-00200, 1994 WL 535542, at *3 (Tenn. Ct. App. Oct. 5, 1994) (*no perm. app. filed*); *Mills v. Bank of Roane County*, 1991 WL 126553, at *2 (Tenn. Ct. App. July 15, 1991) (*no perm. app. filed*); Tenn. R. Civ. P. 41.02(1). Dismissal is a harsh sanction that generally is not favored in circumstances where lesser sanctions are available, and this court does not treat decisions to dismiss cases pursuant to rule 41.02 lightly. *Kotil*, 1994 WL 535542, at *3. In reviewing such decisions, however, we recognize "that trial judges must be able to control their dockets and that to do so, they must have available the most severe spectrum of sanctions not merely to penalize those whose conduct warrants sanctions but also to deter others who might be tempted to engage in similar conduct if the sanction did not exist." *Id*. Accordingly, our review of such decisions is governed by an abuse of discretion standard. *Id*., at *4.

Although we recognize that the sanction of dismissal is "harsh," we have found no authority for the proposition that a dismissal proceeding under rule 41.02 constitutes a criminal contempt proceeding or, for that matter, that the sanction of dismissal constitutes a criminal contempt penalty. In light of Turner's failure to direct us to any such authority, we reject his attempt to characterize the dismissal proceeding as a criminal contempt proceeding. Moreover, we note that Rodell's Petition for *Scire Facias* and Citation for Contempt specifically informed Turner that Rodell was seeking sanctions based upon Turner's failure to post the bond and that one of the sanctions sought was dismissal pursuant to rule 41.02.

As for Turner's argument that his failure to comply with the trial court's order was not willful,[10] our review of this issue is hampered because the record on appeal does not

---

[10]Although the language of rule 41.02 does not explicitly require that the plaintiff's failure to comply be willful, we note that appellate courts interpreting the comparable federal rule have held that a dismissal under rule 41(b) for failure to comply with a court order is appropriate only when there is a clear record of delay or contumacious conduct by the plaintiff or when less drastic sanctions have proven ineffective. *Guyer v. Beard*, 907 F.2d 1424, 1429 (3d Cir. 1990); *Roland v. Salem Contract Carriers, Inc.*, 811 F.2d 1175, 1177 (7th Cir. 1987); *Judkins v. Beech Aircraft Corp.*, 723 F.2d 818, 819-20 (11th Cir. 1984); *Carter v. City of Memphis*, 636 F.2d 159, 161 (6th Cir. 1980); *Wrenn v. American Cast Iron Pipe Co.*, 575 F.2d 544, 546 (5th Cir. 1978). Like Tennessee rule 41.02, federal rule 41(b) authorizes the court to dismiss a claim "[f]or failure of the plaintiff to prosecute or to comply with these rules or any order of court." Fed. R. Civ. P. 41(b).

contain a complete transcript of the evidence presented at the hearing on Rodell's motion. The record contains a partial transcript of the October 2, 1998, hearing, but the transcript is marked "Excerpt only," and it appears to contain only the ruling announced by the trial court at the hearing's conclusion. The only evidence cited by Turner in support of this issue is an affidavit that was filed several days after the hearing.[11]

The appellant bears the burden of showing that the evidence presented below preponderates against the trial court's judgment. *Coakley v. Daniels*, 840 S.W.2d 367, 370 (Tenn. Ct. App. 1992). To this end, the Tennessee Rules of Appellate Procedure require the appellant to prepare "a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(b); *see also Johnson v. Hardin*, 926 S.W.2d 236, 239 (Tenn. 1996); *Nickas v. Capadalis*, 954 S.W.2d 735, 742 (Tenn. Ct. App. 1997). In the absence of a transcript or statement of the evidence, a presumption arises that the parties presented sufficient evidence to support the trial court's judgment, and this court will affirm the judgment. *Coakley*, 840 S.W.2d at 370; *Irvin v. City of Clarksville*, 767 S.W.2d 649, 653 (Tenn. Ct. App. 1988).

Inasmuch as the record in this case fails to include a complete transcript of the hearing on Rodell's motion, we are unable to determine whether, based upon the evidence before it, the trial court erred in finding that Turner was in "willful contempt" due to his "failure to comply with the [court's] orders." Under these circumstances, Turner has failed to meet his burden of showing that the evidence preponderates against the trial court's judgment, and this issue does not provide a basis for this court to reverse the judgment on appeal.

In any event, we conclude that the trial court was authorized to dismiss Turner's intervening complaint regardless of whether the evidence supported a dismissal under rule 41.02. As we previously held, the trial court acted within its discretion when it conditioned Turner's

---

[11]The affidavit was signed by an account executive employed by Fidelity and Deposit Company of Maryland, who stated that the company had been unable to write a bond as required by the court's orders because the company's underwriters could not determine the scope of the bond.

right to intervene in this action upon his posting a bond. When Turner failed to meet this condition, the trial court properly denied Turner's request to intervene by dismissing his complaint.

We conclude, on the other hand, that the trial court's dismissal of MCS's claims in the underlying action must be reversed. Although rule 41.02 expressly authorizes a trial court to dismiss a party's claim if the party asserting the claim fails to comply with an order of the court, we have found no support within the language of rule 41.02 for dismissing one party's claim based upon a different party's violation of a court order. Tenn. R. Civ. P. 41.02(1). In this case, MCS did not violate the court's orders allowing intervention because the orders did not require MCS to perform any specific act or, conversely, to refrain from performing any act. As a condition of allowing Turner to intervene in the underlying action, the orders required only Turner, and not MCS, to post a $1.6 million bond. By failing to post the required bond, Turner risked, and ultimately suffered, the dismissal of his intervening complaint. The record contains no support, however, for imposing this sanction against MCS.

In urging this court to affirm the trial court's order of dismissal against MCS, the Defendants cite *Quality First Staffing Services v. Chase-Cavett Services, Inc.*, No. 02A01-9807-CH-00205, 1999 WL 281312 (Tenn. Ct. App. May 7, 1999) (*no perm. app. filed*). In that case, the trial court ruled that the appellants, both of whom were officers of a corporate defendant, were in contempt of court for failing to deposit money into the court registry as directed by previous court orders. *Quality First*, 1999 WL 281312, at *2. Although the corporate officers were not parties to the action, we affirmed the trial court's judgment of contempt against them, reasoning that "a corporation can comply with such an order only by acting through its agents." *Id.*, at *4.

We conclude that the *Quality First* decision is inapposite to the present case. In *Quality First*, we upheld the trial court's judgment of contempt against the corporate officers, in part, because we reasoned that the only way the corporate defendant could have complied with the court's previous orders was through its agents, the corporate officers. We also observed that at least one of the orders specifically directed the two corporate officers to deposit the funds into

the court registry on behalf of the corporation. *Quality First*, 1999 WL 281312, at *2, *4. This reasoning does not apply in the present case. Unlike a corporation, which can act only through its officers and agents, Turner is an individual who may act on his own behalf without the assistance of an agent. Moreover, unlike the orders at issue in *Quality First*, the orders in this case directed only Turner, and not the corporation, to post the $1.6 million bond.

We similarly reject the Defendants' suggestion that the order of dismissal against MCS can be upheld by disregarding the corporation's separate identity, a theory also known as "piercing the corporate veil." This theory permits a court to disregard a corporate entity in order to impose liability against a related entity, such as a parent corporation or a controlling shareholder, where the two entities are in fact identical or indistinguishable and where necessary to accomplish justice. *Stigall v. Wickes Mach.*, 801 S.W.2d 507, 510-11 (Tenn. 1990); *Scandlyn v. McDill Columbus Corp.*, 895 S.W.2d 342, 346-47 (Tenn. Ct. App. 1994). If the court imposes liability against the related entity under this theory, the evidence must show that one entity is the alter ego of the other. *Continental Bankers Life Ins. Co. v. Bank of Alamo*, 578 S.W.2d 625, 632 n.1 (Tenn. 1979).[12]

We conclude that the application of this theory should not have led to the

---

[12]Traditionally, courts have used this theory to impose liability against a controlling shareholder who has used the corporate entity to avoid his legal obligations. *Clark v. United Techs. Automotive, Inc.*, 594 N.W.2d 447, 449 n.3 (Mich. 1999). In recent years, however, a "reverse piercing" theory has gained recognition whereby courts may impose liability against a corporation for the debts of its controlling shareholder. *See, e.g.*, *In re Blatstein*, 192 F.3d 88, 100 (3d Cir. 1999); *Scholes v. Lehmann*, 56 F.3d 750, 758 (7th Cir.), *cert. denied*, 516 U.S. 1028 (1995); *Century Hotels v. United States*, 952 F.2d 107, 110 n.6 (5th Cir. 1992); *Zahra Spiritual Trust v. United States*, 910 F.2d 240, 243-44 (5th Cir. 1990); *Thomsen Family Trust, 1990 v. Peterson Family Enters., Inc.*, 989 S.W.2d 934, 937 (Ark. Ct. App. 1999); *State v. Easton*, 647 N.Y.S.2d 904, 908-09 (N.Y. Sup. Ct. 1995). *See generally* Gregory S. Crespi, *The Reverse Pierce Doctrine: Applying Appropriate Standards*, 16 J. Corp. L. 33, 55-69 (1990). As one court explained, whereas piercing analysis typically "is used to hold individuals liable for the actions of a corporation they control," reverse piercing "seeks to hold a corporation accountable for actions of its shareholders." *American Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997). Despite this distinction, both theories rely on the premise that one entity is the alter ego of the other. *Scholes*, 56 F.3d at 758; *Century Hotels*, 952 F.2d at 110 n.6; *Zahra Spiritual Trust*, 910 F.2d at 243-44. Although some courts apparently have embraced the "reverse piercing" doctrine, others have expressed concerns about adopting this theory, describing it as "potentially problematic" or "controversial." *Floyd v. IRS*, 151 F.3d 1295, 1300 (10th Cir. 1998); *Nursing Home Consultants, Inc. v. Quantum Health Servs., Inc.*, 926 F. Supp. 835, 840 n.12 (E.D. Ark. 1996), *aff'd*, 112 F.3d 513 (8th Cir. 1997); *Estate of Dailey v. Title Guar. Escrow Serv., Inc.*, 178 B.R. 837, 844 (D. Haw. 1995), *aff'd*, 81 F.3d 167 (9th Cir. 1996).

dismissal of MCS's claims. In so holding, we express no opinion on whether a trial court, pursuant to rule 41.02, could dismiss both a corporation's claims and the claims of its controlling shareholder based upon the theory of piercing the corporate veil. In the present case, however, the trial court had before it both the corporation, MCS, and its controlling shareholder, Turner. Unlike the court's orders in *Quality First*, the orders at issue in this case did not require both the corporation and its officer to perform a specific act. In short, the record contains nothing to suggest, prior to entry of the trial court's order of dismissal, that the court expected MCS to perform the required act of posting the bond if Turner failed to do so. Under these circumstances, we hold that the trial court abused its discretion when it dismissed MCS's claims based upon this theory.

### III. Order Entering Summary Judgment in Favor of Rodell on Counterclaim Against Turner

We also hold that the summary judgment entered in favor of Rodell on his counterclaim against Turner must be reversed. Ordinarily, the dismissal of an original complaint or an intervening complaint under rule 41.02 does not affect a defendant's right to be heard on any properly asserted counterclaims. *Quelette v. Whittemore*, 627 S.W.2d 681, 682 (Tenn. Ct. App. 1981); *Brewer v. Williams*, 80 S.E.2d 190, 194 (Ga. 1954). In such a case, the parties remain before the court, and the defendant may elect to proceed on his counterclaims against the plaintiff. *Quelette*, 627 S.W.2d at 682; *American Actuaries, Inc. v. Mid America Diversified Servs., Inc.*, 1988 WL 31964, at *2-*3 (Tenn. Ct. App. Apr. 7, 1988) (*no perm. app. filed*).

The dismissal of an intervening complaint, however, differs procedurally from the denial of a motion to file an intervening complaint. In the latter case, the movant's request to participate in the litigation is denied, and the movant never becomes a party to the original action. *See Graham v. City of Anchorage*, 364 P.2d 57, 59 (Alaska 1961); *McGough v. Insurance Co. of N. Am.*, 691 P.2d 738, 742 (Ariz. Ct. App. 1984); *Wyatt v. R.D. Werner Co.*, 524 N.W.2d 579, 580 (N.D. 1994); *see also Ray v. Trapp*, 609 S.W.2d 508, 510 (Tenn. 1980); *Greer v. American Sec. Ins. Co.*, 445 S.W.2d 904, 905 (Tenn. 1969); *Goodman v. State*, 351 S.W.2d 399, 401 (Tenn. Ct. App. 1960).

Despite the trial court's citation of rule 41.02, we believe that the court's dismissal of Turner's intervening complaint, in actuality, constituted a denial of Turner's motion to intervene. As we previously indicated, when the trial court granted Turner's motion to intervene, the court did so only upon the condition that Turner post a $1.6 million bond. The effect of this ruling was that, if Turner failed to post the required bond, Turner would not be permitted to intervene in this action. Ultimately, Turner failed to post the bond, and the trial court dismissed his intervening complaint. Given the procedural history of this litigation, we conclude that this dismissal effectively denied Turner's motion to intervene and prevented him from ever becoming a party to this action. Inasmuch as Turner never became a party, he could not assert his claims for declaratory and injunctive relief against Rodell in this action, and, correlatively, Rodell could not assert a counterclaim in this action against someone who was not a party relative to claims that were not at issue. Under these circumstances, the trial court erred in granting Rodell's motion for summary judgment on his counterclaim against Turner.

For the foregoing reasons, we reverse the trial court's order of dismissal to the extent that it dismissed MCS's claims against the Defendants, and we reverse the trial court's order granting Rodell's motion for summary judgment against Turner. In all other respects, the trial court's orders are affirmed, and this cause is remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed one-half to Intervening Plaintiff C.O. Turner, III, and one-half to Defendants Rick Rodell, Cornerstone Systems, Inc., Tim Clay, Pat Nieman, Jerry Rice, Ricardo Fernandez, Guy Wallace, Bruce Hallmann, Larry Pritchett, Jack Billingsley, Jim Chaltas, Gregg Mitchell, and Angie Taylor, for which execution may issue if necessary.

_____
FARMER, J.

_____
HIGHERS, J.

_____
LILLARD, J.