IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 12, 2007 Session

# HERMAN CHARLES HEIKKENEN v. JANICE LEE HEIKKENEN

**Appeal from the Circuit Court for White County**
**No. CC 988     John Turnbull, Circuit Judge**

**No. M2005-01084-COA-R3-CV - Filed on May 11, 2007**

On this appeal, the sole issue is whether the trial court erred in awarding $1,500.00 per month as alimony *in futuro* to the wife. Finding no basis for determining the trial court abused its discretion in awarding alimony in this amount, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

DONALD P. HARRIS, SR.J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., and FRANK G. CLEMENT, JR., J., joined.

Craig P. Fickling, Cookeville, Tennessee, for the appellant, Herman Charles Heikkenen.

Thomas F. Bloom, Nashville, Tennessee, for the appellee, Janice Lee Heikkenen.

## OPINION

This case was initially tried before the Circuit Court for White County, Tennessee, on June 21, 2004. At the conclusion of the trial, the trial court granted Ms. Heikkenen a divorce on stipulated grounds pursuant to Tennessee Code Annotated section 36-4-129, divided the marital property of the parties and made provisions for the parenting of the parties' minor child. Because Ms. Heikkenen, a school teacher, had not, at the time, been rehired for the upcoming school year, the trial court delayed its determination of the issue of alimony. A subsequent hearing was conducted on March 11, 2005. While the order entered by the trial court reflects Ms. Heikkenen testified during that hearing and that exhibits were introduced, neither a transcript of those proceedings nor a statement of the evidence presented have been included in the record on this appeal. No exhibits introduced during that hearing have been certified as part of the record before this court.

A transcript of the proceedings held June 21, 2004, reveals the parties were married on May 4, 1982, and have a son, Eric, born April 14, 1994. During the course of the marriage, Dr. Heikkenen attended medical school from which he graduated in 1994. While Dr. Heikkenen was earning his medical degree, Ms. Heikkenen worked at Neiman Marcus in Texas and contributed her earnings to the family's expenses. Following his graduation, Dr. Heikkenen began a residency

program at the University of Tennessee. Prior to completing his residency requirements, he took a two and one-half year leave of absence. The leave of absence began when Ms. Heikkenen's brother committed suicide and Dr. Heikkenen's mother was diagnosed with terminal breast cancer and died from her illness six month later. Perhaps as a result of these events, Dr. Heikkenen fell into alcoholism for which he received treatment as a part of an impaired physicians program. During this period of time, Dr. Heikkenen contributed nothing toward the support of his wife and their son. He completed his residency requirements in 2002. By this time, he had withdrawn $73,952.30 from an Individual Retirement Account accumulated during the marriage of the parties in order to support himself.

Dr. Heikkenen is now a licensed physician in the states of Arizona, Georgia and Colorado. At the time of trial, he was forty-eight years of age and was living in Prescott, Arizona. Dr. Heikkenen moved to Prescott in December 2003, having accepted a job at the Prescott Urgent Care Center where he practices family medicine. His work includes providing medical care for the patients of a nursing care center and also seeing individual patients. Under the terms of his contract, he is paid hourly at the rate of $52.50 per hour. In the year 2004, Dr. Heikkenen earned $60,167.64 through June 6 of that year.

Janice Heikkenen, aged forty-seven at the time of trial, received a Bachelor of Science degree from the University of Tennessee in 1980. She returned to school at Tennessee Technological University (Tennessee Tech) in order to receive her teacher's certificate. In May 2003, she received her Master's Degree in Curriculum and Instruction from Tennessee Tech, and in May 2004, received a Ed.S. degree in Instructional Leadership. At the time of trial, she had taught two years in the White County school system but had not been rehired for the upcoming school year. Ms. Heikkenen indicated that it would be August 2004 before she knew whether she would be retained as a school teacher. She and the parties' son were living in a house located in Sparta, Tennessee, furnished by her parents.

In July, 2003, Ms. Heikkenen was diagnosed with breast cancer. She underwent a modified mastectomy on August 15, 2003, and had undergone chemotherapy and radiation treatments. At trial, Ms. Heikkenen testified she was scheduled to have breast reconstruction surgery on July 15, 2004, and that she faced the possibility of additional surgery following that.

As a result of the uncertainty concerning Ms. Heikkenen's re-employment by the White County School System, the trial court postponed it's decision on alimony and ordered that Dr. Heikkenen continue paying the temporary support payments until that determination was made. The court designated Ms. Heikkenen the primary residential parent for the parties minor son and ordered that Mr. Heikkenen pay child support in the amount of $1,600.00 per month. The court also ordered that Dr. Heikkenen pay $4,000 toward Ms. Heikkenen's attorneys fees.

The record reflects a hearing was held before the trial court on March 11, 2005, regarding the award of alimony to Ms. Heikkenen. As previously stated, no transcript of that proceeding or statement of the evidence presented has been filed in the record on appeal. In the brief filed in behalf

of Dr. Heikkenen, it is asserted that Ms. Heikkenen testified at that hearing she had been rehired by the White County School system and was earning $2672.24 per month gross and $2150.99 net income. The statement in the brief concerning Ms. Heikkenen's income makes reference to an unverified, unsigned document titled "Statement of Income and Need", filed November 15, 2005, contained in the Technical Record. By order filed April 11, 2005, the trial court ordered that Dr. Heikkenen pay $1,500 per month alimony to Ms. Heikkenen for life or until her remarriage beginning March 11, 2005. From that order, Dr. Heikkenen has appealed.

Tennessee Code Annotated section 36-5-121(a) gives the courts discretion to order "suitable support and maintenance of either spouse by the other spouse . . . according to the nature of the case and the circumstances of the parties." In determining whether to award support, and the nature, amount and duration of such support, courts are to consider a number of factors:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible

and intangible contributions by a party to the education, training or increased earning power of the other party;

(11)  The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12)  Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i) (2005).

It is obvious that many of the enumerated factors are directly related to the economic needs of the parties and their ability to meet those needs with the economic resources and earning potential available to them after divorce. Thus, Tennessee courts have frequently stated that the most important factors to consider when deciding upon alimony are the need of the disadvantaged spouse and the ability of the other spouse to provide support. Robertson v. Robertson, 76 S.W.3d 337, 338 (Tenn. 2002); Bogan v. Bogan, 60 S.W.3d 721, 730 (Tenn. 2001); Aaron v. Aaron, 909 S.W.2d 408, 410 (Tenn. 1995).

As the language of the statute indicates, the trial court has broad discretion in determining the type, amount, and duration of alimony to award, based upon the particular facts of each case. Burlew v. Burlew, 40 S.W.3d 465, 470 (Tenn. 2001); Crabtree v. Crabtree, 16 S.W.3d 356, 360 (Tenn. 2000); Sullivan v. Sullivan, 107 S.W.3d 507, 511 (Tenn. Ct. App. 2002); Kinard v. Kinard, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998). Since alimony is largely a matter in the discretion of the trial court, appellate courts are not inclined to alter a trial court's award of alimony, unless the trial court applied an incorrect legal standard or reached a decision not supported by the facts that causes an injustice to the party complaining. Eldridge v. Eldridge, 42 S.W.3d 82, 85 (Tenn. 2001). Findings of fact by the trial court are presumed to be correct unless the evidence preponderates otherwise. Tenn. R. Civ. P. 13(d).

Our review of the action of the trial court in awarding alimony in this case is severely hampered by the absence of a transcript of the proceedings or statement of evidence introduced at the March 11, 2005 hearing. The Tennessee Rules of Appellate Procedure place the responsibility for preparing an accurate transcript or statement of the evidence upon the appellant. See Tenn. R. App. P. 24(b) (2004); McDonald v. Onoh, 772 S.W.2d 913, 914 (Tenn. Ct. App. 1989). Without a statement of the evidence which accurately reflects the evidence presented to the trial court, we must presume that the record, had it been accurately presented to this Court, would contain sufficient evidence to support the trial court's decision. See, Mfrs. Consolidation Serv., Inc. v. Rodell, 42 S.W.3d 846, 865 (Tenn. Ct. App. 2000); Sherrod v. Wix, 849 S.W.2d 780, 783 (Tenn. Ct. App. 1992); McDonald, 772 S.W.2d at 914. Indeed, there is an additional reason to apply the presumption in this case. The "Statement of Income and Need" contained in the technical record and referred to by Dr. Heikkenen as evidence of Ms. Heikkenen's income, itemizes her necessary monthly expenses which total $6,145.23. Assuming this document was offered to the trial court, the itemized expenses

exceeded Ms. Heikkenen's monthly income of $2150.99 and child support of $1600.00 by $2,394.24 per month. Without a transcript or statement of the evidence offered, we simply cannot speculate as to the testimony presented to the trial court at that hearing. Accordingly, we must presume the testimony of Ms. Heikkenen and the exhibits offered during the March 11, 2005 hearing established a need for the additional support awarded by the trial court.

The only evidence contained in the record before us concerning Dr. Heikkenen's ability to pay support was presented at trial. That evidence consisted of a pay record of Dr. Heikkenen containing his 2004 earnings through June 6 of that year. For the 5.2 month period covered, Dr. Heikkenen earned gross wages of $60,167.64 or $11,570.70 per month. For that period, $23,532.86 was deducted from his gross income for federal and state taxes. We calculate Dr. Heikkenen netted $7,045.15 per month for that period. After deducting the child support and alimony awarded by the trial court, Dr. Heikkenen had $3,945.15 remaining net income available for his own living expenses.

At trial, Dr. Heikkenen claimed monthly expenses totalling $7529.00 per month. Included in these expenses were $1,484.00 in child support payments, $500.00 to the Internal Revenue Service, $500.00 in legal fees, $600.00 for pendente lite support payments, and $310 per month for automobile payments and automobile insurance for Ms. Heikkenen's automobile that Dr. Heikkenen was ordered to pay during the pendency of the divorce action. Deduction of these amounts from Dr. Heikkenen's income leave $4,135.00 per month in recurring living expenses which approximates the amount he has available.

At trial, Dr. Heikkenen testified that he had been called in more than his normal hours during January, February and March of 2004, because those months are included in the flu season and one of his senior partners was ill during that period. He indicated he expected to work fewer hours during the summer months and estimated he would gross an average of $9,838.18 per month. There is no evidence in the record before us that Dr. Heikkenen testified or offered additional evidence as to his full year's income during the March 11, 2005, hearing. Accordingly, the trial court would have been justified in accepting his average income for the 5.2 month period as representative of Dr. Heikkenen's earning ability.

Considering the factors set forth in Tennessee Code Annotated section 36-5-121(i), we note additional factors that would justify an award of alimony in this case. Dr. Heikkenen has a considerably higher relative earning capacity than does Ms. Heikkenen. Based upon the 5.2 month period for which earnings were provided, he has the ability to earn approximately $139,000 per year whereas Ms. Heikkenen earns approximately $32,000 per year based upon the "Statement of Need and Income" referred to in Dr. Heikkenen's brief. The parties had a long-term marriage of twenty-two years. Ms. Heikkenen made substantial contributions to the marriage and Dr. Heikkenen's earning ability by applying her earnings to the family's expenses while Dr. Heikkenen attended medical school. During the two and one-half year leave of absence following his graduation from medical school, Dr. Heikkenen contributed nothing to the support of his wife and child, and depleted $73,952.30 of marital savings for his own support. Ms. Heikkenen has been diagnosed with breast cancer and will require additional surgery and treatment because of that condition. There is no

evidence Dr. Heikkenen presently has a physical or mental condition that would interfere with his ability to continue his current employment. Finally, the dissolution of the marriage was due to the fault of Dr. Heikkenen.

In summary, there is no basis for determining the trial abused its discretion in awarding Ms. Heikkenen $1500.00 per month as alimony *in futuro*. Accordingly, the judgment of the trial court is affirmed and this matter is remanded to the trial court. Ms. Heikkenen has requested she be awarded her attorney's fees incurred in defending this appeal. We believe she is entitled to recover her reasonable attorney's fees, the amount to be determined by the trial court on remand. The costs of this appeal shall be assessed to Dr. Heikkenen.

_____
DONALD P. HARRIS, SENIOR JUDGE