# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
September 11, 2013 Session

## CATHLEEN JACKSON v. ROGER L. KASH

**Appeal from the Chancery Court for Williamson County**
**No. 36885     James G. Martin, III, Judge**

---

**No. M2012-01338-COA-R3-CV - Filed October 22, 2013**

---

The issues on appeal in this financially catastrophic divorce proceeding include who is liable for the debt of $240,000 that Wife incurred after the complaint for divorce was filed. The trial court held Wife liable for the entire sum and Husband jointly and severally liable for $75,889.59 of that amount upon the finding that $75,889.59 was used to preserve the parties' principal marital asset, the residence, pending its sale. Husband contends this was error for he expressly refused to be liable for this debt. The court also awarded a judgment against Husband in favor of Wife for $101,714 of expenses she incurred to maintain the marital residence. Wife was awarded one half of Husband's pension and $75,000 of her attorney's fees as alimony in solido, and sixty months of rehabilitative alimony, at $1,250 per month. Husband contends that all of these awards were error. Husband, however, provided no transcript of the evidence or statement of the evidence; therefore, there is no evidence before this court upon which to find that the evidence preponderates against the trial court's findings. Accordingly, we affirm the trial court's findings of fact in all respects. Further, we find no error with the trial court's legal conclusions or judgments by classifying the award as alimony in futuro. All other rulings by the trial court are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and ANDY D. BENNETT, J., joined.

J. Todd Faulkner, Nashville, Tennessee, for the appellant, Roger L. Kash.

Fred C. Dance, Franklin, Tennessee, for the appellee, Cathleen Jackson.

**OPINION**

Roger L. Kash ("Husband") and Cathleen Jackson ("Wife") met in 1997 when Husband visited a casino in Metropolis, Illinois where Wife was working as a blackjack dealer.[1] Following an automobile accident in June of 1998, she ended her employment in Metropolis. They married on August 15, 1998, and Wife moved to Williamson County to live with Husband.

At the time of the marriage, Husband, who has a Bachelor of Science Degree in Electrical Engineering, was employed by Saturn Corporation in Spring Hill, Tennessee, where he had worked since August 1996. In June of 2003, the parties acquired a marital residence, which consisted of two tracts of land and a residence located on Clovercroft Road in Williamson County. The plan was to reside in the residence while they remodeled and developed the property as a venue for weddings and other events; unfortunately, that plan never came to fruition.

Husband continued working for Saturn Corporation until April 2005, when he began working for General Motors, which required that he move to Detroit, Michigan. Wife followed Husband to Detroit for three months after which she returned to Tennessee while Husband continued to work in Detroit. Husband ended his employment with General Motors in 2007, at which time he moved back to reside with Wife in Williamson County but he did not return to work for Saturn.

Husband worked for Saturn Corporation or General Motors (collectively "GM") for 270 months, 109 of which was during the marriage to Wife. During the last few years of his employment with GM, his income and resulting pension benefits increased and his gross income for the last full year of employment, 2007, was $144,482. Husband received a severance package at the time of his retirement and he began receiving a monthly pension payment of $1,399.04 from GM in 2007.

Husband obtained a Tennessee contractor's license in April of 2007 and began working as a general contractor. There was no evidence of Husband's income in 2008; however, Husband stated that he lost $19,000 that year. As for the next three years, Husband stated his net income for 2009 was approximately $14,000, in 2010 it was $16,000, and in 2011 it was $12,000.

---

[1]There is no transcript or statement of the evidence in the record; thus, the facts for this case are gleaned entirely from the trial court's detailed and lengthy factual findings in its Memorandum and Order.

Wife, who has a high school education and one and a half years of community college education, seldom worked outside of the home during the marriage and her income was minimal. She was unemployed in 1999, she briefly worked for the United States Postal Service in 2000, earning $3,281 for the year. She had no reported income from 2001-2007, though she occasionally worked cleaning houses. In 2008, Wife earned $17,028 as a nanny; she continued working as a nanny until June 2009, earning $7,625 for that year. Thereafter, Wife drew unemployment benefits and she repeatedly applied for work but was unsuccessful.

Wife filed a complaint for divorce on October 19, 2009. At the time, the parties were both residing at the marital residence on Clovercroft Road in Williamson County and they continued to reside together but not without conflict.

As noted above, the plan was to develop the marital residence on Clovercroft Road as a venue for weddings and other events but that never came to fruition. Nevertheless, in order to preserve the property, which was the parties' principal marital asset, the trial court approved an Agreed Order on May 19, 2010, that authorized Wife to borrow funds to pay the mortgage and insurance and to make repairs to preserve the marital residence. The order, which Husband agreed to, further provided that Husband was responsible for doing some of the labor on the marital residence; the order also provided that any dispute regarding the work to be done would be resolved by the court.

Upon subsequent motion by Wife, the trial court found that Husband failed to make the necessary repairs he had agreed to make and authorized Wife to hire others to make the repairs; the court also stated in the order that it would make an equitable adjustment to compensate Wife at a later date.

On September 20, 2010, the court authorized Wife to borrow additional funds to continue paying the mortgage to keep the house out of foreclosure. In the same order, the trial court noted that, at the final hearing, Wife would receive a credit out of the marital estate for the amount expended to preserve the marital residence.

The divorce trial began on April 13, 2011; it was tried over ten days, over a period of several months. Until May of 2011, both spouses continued to reside at the marital residence on Clovercroft Road; however, following a hearing on May 24, 2011, the court ordered Husband not to return to the marital residence, which decision was based on repeated conflicts between the spouses. Following a hearing on July 19, 2011, the court authorized Wife to lease the residence on a month to month basis.

After the fifth day of trial, which was on September 22, 2011, the trial was scheduled to resume on December 14, 2011,[2] with additional days set for March of 2012. In the interim, James Tucker, who had loaned substantial sums to Wife and provided personal services for the benefit of the parties' marital residence, filed a motion to intervene in which he alleged he was owed over $240,000. He also requested a lien on the marital residence that would be subordinate to the preexisting mortgages. The court granted permission to intervene for that limited purpose.

On the last day of trial, February 28, 2012, the trial court ordered the parties to develop a plan for the immediate sale of the residence. By order entered on March 27, 2012, the court directed the property be listed for sale.

On April 26, 2012, the trial court entered its thorough and detailed Memorandum and Order, which comprised 76 pages. The trial court granted Wife a divorce based upon Husband's adultery. The trial court specifically found that 60% of Husband's income on which his GM pension was based was earned during the marriage. The court found that Wife was capable of rehabilitation and awarded her rehabilitative alimony of $1,250 per month for a period of sixty months. The court also awarded Wife 50% of Husband's GM pension, which amounted to $699.52 per month. Each party was held responsible for their separate debts, including separate credit card obligations.

The trial court additionally addressed the intervening claim of James Tucker. The court found that Mr. Tucker had loaned Wife $240,128, in the form of cash, services, supplies, and direct payments.[3] The court awarded Mr. Tucker a judgment against Wife in the amount of $240,128, and a lien on Wife's interest in the Clovercroft Road property. The court found Husband had not agreed to pay Mr. Tucker, in fact, the court acknowledged that Husband had specifically stated in 2006 that he would not agree to be liable; therefore, the court found that Husband was not directly liable to Mr. Tucker for the entire debt incurred by Wife; nevertheless, the trial court specifically found that $75,889.59 of the loans, cash contributions and personal services by Mr. Tucker directly preserved and benefitted the Clovercroft Road property as they were for mortgage payments, Heloc payments, homeowner's insurance, furnace replacement, roof replacement, water heater replacement, and drain repair, all of which the court found were necessary to preserve the marital asset. Based upon these findings, the trial court awarded a judgment in favor of Mr. Tucker against Husband in the amount of $75,889.59 and a lien on Husband's interest in the Clovercroft

_____

[2]The extended delay was due, in part, to Husband's counsel being granted leave to withdraw at that hearing and Husband having to hire new counsel.

[3]Wife acknowledged the accuracy of this amount.

Road Property to secure that judgment. The trial court also awarded to Wife a lien, subordinate to the mortgages, line of credit, and Tucker's liens, in the amount of $100,714.69 for payments she made since 2010 to protect and maintain the property, such as mortgage and line of credit payments to avoid foreclosure, and other expenses necessary to "keep the property afloat." Further, to the extent the net proceeds from the sale of the Clovercroft property may not be sufficient to satisfy this lien, Wife was awarded a judgment against Husband for the deficiency.[4] The trial court also awarded Wife $75,000 as alimony in solido for her attorney's fees, which was based in part upon the finding that Husband repeatedly refused to comply with discovery orders and other orders of the court, which resulted in numerous contempt petitions and unnecessary expense to Wife.

Following a motion to alter or amend, the trial court entered a final order on June 5, 2012, amending its previous Memorandum and Order to reflect that the judgment of $75,889.51 in favor of Mr. Tucker was a judgment against both Husband and Wife, jointly and severally. The court also noted that the $240,128.19 against Wife, included the sum of $75,889.51. Thereafter, Husband filed a timely appeal.

## ANALYSIS

Husband raises four issues on appeal. First, he contends the trial court erred in awarding a judgment against him in favor of James Tucker, who intervened in the parties' divorce proceedings. Second, Husband contends the trial court erred in awarding Wife a judgment in favor of Wife in regard to expenses connected to the marital estate. Third, Husband contends the trial court erred in awarding Wife rehabilitative alimony and alimony in solido. Last, Husband contends the trial court erred in awarding Wife her attorney's fees. We shall address each issue in turn.[5]

## STANDARD OF REVIEW

The standard of review of a trial court's findings of fact is de novo, and we presume that the findings of fact are correct unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). "In the absence of a transcript or statement of the evidence, a presumption arises that the parties presented sufficient evidence to support the trial court's judgment, and this court will affirm the judgment." *Manufacturers Consolidation Serv., Inc.*

---

[4]This award and lien was reduced by $9,714.94, being one-half of the utilities and other expenses on the Clovercroft property of which each spouse was held responsible.

[5]Mr. Tucker did not file a brief or make an appearance in this appeal.

*v. Rodell*, 42 S.W.3d 846, 865 (Tenn. Ct. App. 2000) (citing *Coakley v. Daniels*, 840 S.W.2d 367, 370 (Tenn. Ct. App. 1992); *Irvin v. City of Clarksville*, 767 S.W.2d 649, 653 (Tenn. Ct. App. 1988)); *see also Bishop v. Bishop*, 939 S.W.2d 109, 110 (Tenn. Ct. App. 1996) (holding that the appellate court was required to presume the evidence supported the trial court's findings regarding the division of marital property in the absence of an evidentiary record). Because this record does not contain a transcript or statement of the evidence, we are required to presume the evidence supported the trial court's findings of fact. The absence of a transcript or statement of the evidence notwithstanding, issues of law are reviewed de novo with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

## I. DEBT PERTAINING TO THE MARITAL RESIDENCE

The trial court awarded a judgment and a lien in favor of James Tucker in the amount of $75,889.55 against Husband and Wife, jointly and severally. The trial court also secured this judgment with a lien on Husband's interest in the Clovercroft property. Husband contends this was error for there is "nothing in the record that would allow the trial court to make an award against [Husband]." Husband further contends that there is no legal justification for the trial court to make such an award. Wife does not challenge the award against her.

"The division of the marital estate includes both the division of the marital property and the allocation of the marital debt." *Owens v. Owens*, 241 S.W.3d 478, 490 (Tenn. Ct. App. 2007). The marital estate has not been completely divided until there has been an allocation of both the marital assets and the marital debts. *Id*. Trial courts have broad discretion in fashioning an equitable division of marital property and the appellate courts must accord great weight to a trial court's division of marital property. *Id*. Thus, on appeal, it is our role to determine whether the trial court applied the correct legal standards, whether the manner in which the trial court weighed the factors in Tennessee Code Annotated § 36-4-121(c) is consistent with logic and reason, and whether the trial court's division of the marital estate, assets and debts, is equitable. *Id*.

In determining the equitable distribution of marital debt, the court should consider the following factors: (1) the debt's purpose; (2) which party incurred the debt; (3) which party benefitted from incurring the debt; and (4) which party is best able to repay the debt. *Alford v. Alford*, 120 S.W.3d 810, 814 (Tenn. 2003) (citing *Mondelli v. Howard*, 780 S.W.2d 769, 773 (Tenn. Ct. App. 1989)).

Marital debt is not defined by any Tennessee statutes, however, "marital debt" has been defined by our courts as "all debts incurred by either or both spouses during the course of the marriage up to the date of the final divorce hearing." *Id.* at 813. The trial court found that Wife incurred a debt of $240,128 during the marriage to make monthly payments owing on the mortgages that encumbered the marital residence and homeowner's insurance, to replace the furnace, roof and water heater, to repair a drain to generally preserve and maintain the marital residence, all of which was approved by the trial court during these proceedings, albeit, over the objections of Husband.[6] Of that sum, the trial court specifically found that $75,889.55 of the debt borrowed from Mr. Tucker was used to avoid foreclosure, maintain homeowner's insurance, and to preserve and maintain the marital asset. Based upon these findings, the trial court concluded that $75,889.55 of the debt inured to Husband's benefit. In that there is no transcript or statement of the evidence, there is no evidence in this record that can preponderate against the trial court's findings and we presume those findings are supported by the evidence. *See* Tenn. R. App. P. 13(d); *see also Rawlings*, 78 S.W.3d at 296; *Rodell*, 42 S.W.3d at 865.

For the reasons stated above, the trial court awarded a judgement of $75,889.55 in favor of Mr. Tucker against Husband and Wife, jointly and severally, and a lien against Husband's interest in the asset for the amount of the judgment. Finding no error with the $75,889.55 judgment or the lien to secure that judgment, we affirm.

## II. AWARD TO WIFE FOR MARITAL EXPENSES

The trial court awarded Wife a judgment of $100,714.69 against Husband and a lien on the proceeds from the future sale of the Clovercroft property to secure the judgment. This judgment was for a portion of the debt incurred by Wife to pay expenses connected to the marital residence. Husband contends it is inequitable to make him liable to Wife for the full amount; stated another way, Husband contends he should not be liable for more than one-half of the debt, $50,357.35.

Husband's argument is that the trial court's distribution of this marital debt is inequitable. An equitable distribution of the marital estate, including both the assets and debts, is based upon the evidence in the record and how such evidence fits within the factors for distribution. *See Owens*, 241 S.W.3d at 490. As with the judgment in favor of Mr. Tucker for $75,889.55 of the marital debt incurred by Wife, this court is bound by the trial court's findings of fact as we are unable to reweigh the equities without a transcript or statement of

---

[6]While Husband contends he repeatedly requested the trial court to permit the sale of the marital residence, which in hindsight may have been a far wiser decision, the trial court noted that Husband's resistence to make the necessary repairs was a factor in the delay of the sale of the residence.

the evidence. *Rodell*, 42 S.W.3d at 865; *Bishop*, 939 S.W.2d at 110. Further, we note that the trial court explicitly stated in its Memorandum and Order that it considered the factors governing the division of the marital estate set forth in Tennessee Code Annotated § 36-4-121(c) and divided the marital property and apportioned responsibility for paying the marital debt in accordance with those factors and *Alford*. Therefore, there is no basis in fact or law for this court to modify the foregoing judgment. Accordingly, we affirm the judgment and lien in favor of Wife against Husband for the deficiency in the judgment of $100,714.69.

### III. ALIMONY

The trial court specifically found that Wife was capable of rehabilitation and awarded Wife rehabilitative alimony of $1,250 per month for sixty months. The court also awarded Wife one-half of Husband's GM pension, which amounts to $699.52 per month, and designated it as alimony in solido. Husband contends both awards are in error.

Tennessee recognizes four distinct types of spousal support: (1) alimony in futuro, (2) alimony in solido, (3) rehabilitative alimony, and (4) transitional alimony, Tennessee Code Annotated § 36-5-121(d)(1) (2010 & Supp. 2012) and each type of support serves a distinct purpose. *Mayfield v. Mayfield*, 395 S.W.3d 108, 115 (Tenn. 2012).

Our trial courts are afforded wide discretion in determining whether there is a need for spousal support, and if so, the type of support, amount, and duration of the award. *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011) (citing *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004); *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001); *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000)). Absent an abuse of discretion, a trial court's decision to award spousal support will not be disturbed on appeal. *Id.* An abuse of discretion occurs when the trial court "causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Id.* (citing *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010)). The appellate court may not substitute its judgment for that of the trial court; rather, it should presume that the trial court's alimony decision is correct and review the evidence in the light most favorable to that decision. *Id.* at 105-06 (citing *Wright*, 337 S.W.3d at 176; *Henderson*, 318 S.W.3d at 335). The deference to trial court decisions regarding spousal support follows from the recognition that such decisions are "factually driven" and involve "the careful balancing of many factors." *Id.* (citing *Kinard v. Kinard*, 986 S.W.2d 220, 235 (Tenn. Ct. App. 1998)).

A.

The trial court found that Wife was capable of rehabilitation and awarded her rehabilitative alimony of $1,250 per month for a period of sixty months. Husband contends Wife was not entitled to rehabilitative alimony.

Rehabilitative alimony is short-term support that enables a disadvantaged spouse to obtain education or training to become self-reliant following a divorce. *Gonsewski*, 350 S.W.3d at 108. It is designed "to increase an economically disadvantaged spouse's capacity for self-sufficiency." *Id.* at 109. Decisions regarding the type, length, and amount of alimony turn upon the unique facts of each case and careful consideration of many factors, with two of the most important factors being the disadvantaged spouse's need and the obligor spouse's ability to pay. *Id.* at 109-10.

The trial court's Memorandum and Order demonstrates that the court considered the relevant statutory factors, with two of the most important factors being the disadvantaged spouse's need and the obligor spouse's ability to pay, as well as the unique facts of this case. The trial court's specific findings reveal that Husband, who has a Bachelor of Science Degree in Electrical Engineering, believes he will make between $100,000 and $300,000 a year as a general contractor; the court also found that Wife, who has a high school education and one and a half years of community college education, seldom worked outside of the home during the marriage and she never earned more than $17,028 a year during the marriage. The court's findings also reveal that Wife seldom worked outside of the home during the marriage and that, with time, she can be rehabilitated to increase her marketability in the workplace. There is no evidence in the record to refute these findings. We, therefore, affirm the award of rehabilitative support for sixty months.

B.

The trial court awarded Wife one-half of Husband's pension from GM, with the benefits to be paid to Wife as of January 1, 2010. Husband contends this was error.

In its Memorandum and Order, it is clear the trial court expressed the preference to attend to this economic component, Husband's pension, in the division of the marital estate. Unfortunately, the trial court found this was not possible due to deficiencies in both parties' proof. As the trial court explained:

> At the time of trial, this benefit [the GM pension] was in the amount of $1,399.04 a month. 40% of [Husband's] employment with Saturn and GM occurred during the time of the parties' marriage. 60% of his earnings with

Saturn and GM were received during the parties' marriage. However, there was no evidence offered at trial by either party to establish the portion of [Husband's] pension benefits were attributable to his premarital earnings, i.e., his separate property, which was [Husband's] burden of proof, nor to show the portion of [Husband's] retirement benefits which are attributable to his post-marital earnings, i.e., the partial portion, which was the burden of both parties. For these reasons, the Court does not have sufficient evidence to award a portion of [Husband's] pension benefits to [Wife] as part of the division of the marital estate. However, based upon all of the factors set forth in Tennessee Code Annotated § 36-5-121, and considering [Wife's] needs as well as [Husband's] abilities to meet those needs, the Court, as alimony *in solido*, awards one half (50%) of [Husband's] Saturn and GM pension benefits as January 1, 2010 to [Wife]. Counsel for [Wife] shall be responsible for preparing the appropriate Qualified Domestic Relations Order or Orders to further effectuate the division of [Husband's] Saturn/GM pension benefits.

The trial court went on to state: "Until [Wife] begins receiving payments pursuant to a Qualified Domestic Relations Order(s), [Husband] shall continue to send [Wife] the sum of $699.52 each month . . . and [Husband] shall take no action which might affect the right of [Wife] to continue to receive the sum of $699.52 each month."

The expressed intent of the trial court in awarding Wife one-half of Husband's GM pension was *to adjust the distribution of the marital estate*. Because the parties failed to properly quantify the values, the court made the adjustment in the form of alimony in solido. "A typical purpose of such an award [alimony *in solido*] would be *to adjust the distribution of the parties' marital property*." *Burlew*, 40 S.W.3d at 471 (citing *Lindsey v. Lindsey*, 976 S.W.2d 175, 180-81 (Tenn. Ct. App. 1997); *Houghland v. Houghland*, 844 S.W.2d 619, 622-23 (Tenn. Ct. App. 1992)).

As before, the trial court demonstrated in its Memorandum and Order that it considered the relevant statutory factors as well as the unique facts of this case and there is no evidence in the record to refute the trial court's findings. Therefore, we affirm the award to Wife of one-half of Husband's GM pension.

## IV. ATTORNEY'S FEES

Husband contends the trial court erred in awarding Wife $75,000 as alimony *in solido* for her attorney's fees.

An award of attorney's fees is appropriate when the disadvantaged spouse's income is not sufficient to pay her attorney's fees and the divorce fails to provide her with a revenue source, such as from the property division, or assets from which to pay her attorney's fees. *Yount v. Yount*, 91 S.W.3d 777, 783 (Tenn. Ct. App. 2002). Attorney's fees in a divorce action constitute alimony in solido. *Id.*; *Wilder v. Wilder*, 66 S.W.3d 892, 894 (Tenn. Ct. App. 2001); *Herrera v. Herrera*, 944 S.W.2d 379, 390 (Tenn. Ct. App. 1996); *Houghland v. Houghland*, 844 S.W.2d 619, 623 (Tenn. Ct. App.1992); *Storey v. Storey*, 835 S.W.2d 593, 597 (Tenn. Ct. App.1992). When determining whether to award attorney's fees, the trial court must consider the relevant factors regarding alimony set forth in Tennessee Code Annotated § 36-5-121(i).

Trial courts are afforded wide discretion in determining whether there is a need for alimony, and if so, the nature, amount, and duration of the award. *Gonsewski*, 350 S.W.3d at 105 (citing *Bratton*, 136 S.W.3d at 605; *Burlew*, 40 S.W.3d at 470; *Crabtree*, 16 S.W.3d at 360). A trial court's decision to award alimony *in solido* will not be disturbed on appeal absent an abuse of discretion. *Id*. An abuse of discretion occurs when the trial court "causes an injustice by applying an incorrect legal standard, reaches an illogical result, *resolves the case on a clearly erroneous assessment of the evidence*, or relies on reasoning that causes an injustice." *Id*. (emphasis added) (citing *Wright ex rel. Wright*, 337 S.W.3d at 176; *Henderson*, 318 S.W.3d at 335).

As there is no record upon this court to rely in determining whether the trial court abused its discretion, we presume that the evidence supports the trial court's judgment. *See Manufacturers Consolidation Serv., Inc.*, 42 S.W.3d at 865; *Bishop*, 939 S.W.2d at 110. Thus, we affirm the trial court's award of $75,000 to Wife as alimony in solido for her reasonable attorney's fees.

### IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the Appellant, Robert Kash.

_____
FRANK G. CLEMENT, JR., JUDGE

-11-