IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned On Briefs March 12, 2014

**WINFRED ERROL ANKTON v. CHANDRANITA MICHELLE ANKTON**

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-01-1592-03      Kenny W. Armstrong, Chancellor**

**No. W2013-02152-COA-R3-CV - Filed May 27, 2014**

The parties to this action were divorced in Shelby County, Tennessee in 2002. The parties had one child together during the marriage. Pursuant to the original parenting plan, Mother had primary custody of the child. Father remarried and moved to Arkansas in 2003. In 2003, Father brought an action in the trial court charging Mother with contempt and petitioning the court to award him custody of the child. The trial court granted Father's petition, and the child moved to Arkansas to live with Father. In 2012, Father was granted permission by the court to relocate to Texas with the child. In 2013, Mother brought this action in the trial court charging Father with contempt and petitioning the court to award her custody of the child once again. The trial court dismissed Mother's petitions, ruling that Tennessee no longer had exclusive, continuing jurisdiction over custody issues related to the child. On appeal, we affirm the trial court's ruling.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

Chandranita Michelle Ankton, *Pro se*.

Adam Noah Cohen, Memphis, Tennessee, for the appellees, Winfred Errol Ankton.

## MEMORANDUM OPINION[1]

### I. BACKGROUND

The parties, Winfred Errol Ankton ("Father") and Chandranita Michelle Ankton ("Mother"), were divorced on August 16, 2002 in the Chancery Court of Shelby County, Tennessee. The parties had one child during the marriage ("C.A.A."), born on April 24, 2000. Pursuant to the divorce, the court entered a parenting plan that designated Mother as C.A.A.'s primary residential parent and required Father to make child support payments to Mother in the amount of $600 per month. In May 2003, Father remarried and moved to Arkansas. Though the exact timing is unclear from the record, it is undisputed that Mother had moved to Mississippi by 2005.[2]

Unfortunately, the parties' divorce was just the beginning of a protracted dispute over the custody and visitation arrangements for C.A.A. On June 2, 2003, Father brought an action in the trial court charging Mother with contempt for willfully violating the parenting plan and seeking a modification of the plan to name him the primary residential parent. Father alleged that Mother frequently interfered with his parenting time without giving any reasonable justification. On July 17, 2003, after a hearing on the issues, the trial court entered an order in which it specifically found that it retained exclusive, continuing jurisdiction over issues pertaining to custody and visitation of C.A.A. Additionally, the court found Mother to be in both civil and criminal contempt for interfering with Father's parenting time. The court sentenced her to a period of incarceration and assessed various monetary penalties. The trial court bifurcated the proceedings and continued the hearing on Father's request to be designated the primary residential parent. On October 18, 2004, the parties reached an agreement to modify their existing parenting plan and designate Father the primary residential parent. The agreement stated that beginning on January 1, 2005, C.A.A. would live primarily with Father, and Mother would be afforded parenting time at certain specified times. Following the entry of the agreement, C.A.A. moved to Arkansas to live

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[2]Mother currently owns a house in Holly Springs, Mississippi, though she contends that she resides in Tennessee with her sister. Father disputes that Mother currently resides in Tennessee. In any event, Mother stated in her brief that she resided in Mississippi in 2005.

with Father. In April 2005, the trial court entered the final version of the parties' modified parenting plan reflecting their agreement.

During the summer of 2012, Father sought the court's permission to relocate with C.A.A. to El Paso, Texas for work. The trial court granted Father permission to relocate to Texas, and ordered that the parties enter a new parenting plan to reflect their parenting arrangement upon Father's relocation. Father and C.A.A. relocated to Texas in August 2012. In October 2012, the trial court entered a modified parenting plan after several months of discussions between the parties.[3]

On January 7, 2013, Mother filed a petition in the trial court seeking to hold Father in civil and criminal contempt for failure to adhere to the parenting plan and visitation schedule. Mother alleged that Father denied her visitation with C.A.A. from August through October of 2012, as well as over the Christmas holiday. On March 4, 2013, Mother filed a second petition with the court alleging that Father's failure to follow the parenting plan constituted a material change in circumstance such that adherence to the parenting plan was no longer in C.A.A.'s best interest. Mother moved the court to once again designate her the primary residential parent.

In his response, Father denied that he had failed to follow the parenting plan. Additionally, Father contended that Tennessee no longer had exclusive, continuing jurisdiction over child custody determinations in the case because Texas was C.A.A.'s home state and there was no longer a substantial connection between C.A.A. or either parent and the State of Tennessee.

On August 16, 2013, following a hearing on the matter, the trial court dismissed Mother's pending petitions and claims for lack of subject matter jurisdiction. The court found that Tennessee lost its exclusive, continuing jurisdiction, and that Texas was C.A.A.'s home state. On September 16, 2013, Mother filed a notice of appeal to this Court.

## II. ISSUES

Mother primarily raises the following issues on appeal, as we restate them:

1.     Whether the trial court erred in dismissing Mother's petitions for lack of subject matter jurisdiction.

2.     Whether the trial court erred in exercising jurisdiction over Father's

---

[3]The October 2012 modified parenting plan is not included in the record on appeal.

June 2003 petition.

### III. DISCUSSION

Whether a court has jurisdiction is a question of law, which we review de novo upon the record. *Button v. Waite*, 208 S.W.3d 366, 369 (Tenn. 2006). No presumption of correctness attaches to the trial court's conclusions on questions of law. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). However, the trial court's findings of fact are presumed to be correct unless the evidence in the record preponderates against them. Tenn. R. App. P. 13(d).

On appeal, the appellant bears the burden of demonstrating that the evidence presented below preponderates against the trial court's judgment. *Mfrs. Consolidation Serv., Inc., v. Rodell*, 42 S.W.3d 846, 865 (Tenn. Ct. App. 2000). To that end, the Tennessee Rules of Appellate Procedure require the appellant to prepare the record on appeal so that it conveys a fair, accurate, and complete account of what transpired with respect to those issues that are the bases of appeal. Tenn. R. App. P. 24(b); *see also In re M.L.D.*, 182 S.W.3d 890, 894 (Tenn. Ct. App. 2005). The appellant must also provide a transcript or statement of the evidence so that we can determine whether the evidence preponderates for or against the trial court's findings. *In re M.L.D.*, 182 S.W.3d at 894-95. In the absence of a transcript or statement of the evidence, we will conclusively presume that the parties' evidence was sufficient to support the trial court's judgment, and we will affirm the judgment. *Mfrs. Consolidation Serv., Inc.*, 42 S.W.3d at 865.

Issues of jurisdiction in child custody matters are resolved pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), which has been adopted in some form by all fifty states. *Staats v. McKinnon*, 206 S.W.3d 532, 544-45 (Tenn. Ct. App. 2006). The UCCJEA was implemented to establish uniformity across the states for the initial entry, enforcement, and modification of child custody orders and to eliminate situations where courts of different states claimed authority to issue contradictory custody orders. *Id.* at 544. Tennessee's version of the UCCJEA is codified at Tennessee Code Annotated Section 36-6-201 *et seq*.

It is undisputed that the trial court made the initial child custody determination in this case. Pursuant to the UCCJEA, the court that made the initial custody determination retains exclusive, continuing jurisdiction over the matter unless certain contingencies are met. Tenn. Code Ann. § 36-6-217(a) (2010). The relevant Tennessee statute provides:

> (a) Except as otherwise provided in § 36-6-219, a court of this state which has made a child-custody determination consistent with this part has

exclusive, continuing jurisdiction over the determination until:

    (1) A court of this state determines that neither the child, nor the child and one (1) parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or

    (2) A court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state.

Tenn. Code Ann. § 36-6-217(a). The statute gives the trial court that made the initial custody decision the authority to determine whether it still has exclusive, continuing jurisdiction over the matter. *Iman v. Iman*, No. M2012-02388-COA-R3-CV, 2013 WL 7343928, at *4 (Tenn. Ct. App. Nov. 19, 2013)(*no perm. app. filed*). Essentially, the court that made the initial custody decision has a "right of first refusal." *Id*.; *In re Marquise T.G.*, No. M2011-00809-COA-R3-JV, 2012 WL 1825766, at *5 (Tenn. Ct. App. May 18, 2012). Thus, trial courts have some discretion in determining whether to retain jurisdiction over a custody matter when another state could also legitimately exercise jurisdiction. *Iman*, 2013 WL 7343928, at *4 (citation omitted).

The official comments corresponding with UCCJEA sections provide evidence of the purposes and policies underlying that section. Tenn. Code Ann. § 36-6-203. The second official comment to Section 36-6-217 states in part:

    Continuing jurisdiction is lost when the child, the child's parents, and any person acting as a parent no longer reside in the original decree State. . . .

    . . . .

    Exclusive, continuing jurisdiction is not reestablished if, after the child, the parents, and all persons acting as parents leave the state, the non-custodial parent returns. As subsection (b) provides, once a state has lost exclusive, continuing jurisdiction, it can modify its own determination only if it has jurisdiction under the standards of [Section 36-6-216].

Tenn. Code Ann. § 36-6-217, Comments to Official Text, n.2.

Applying the guidance of Section 36-6-217 and its official comments to the present case, it appears that Tennessee lost exclusive, continuing jurisdiction over custody and

-5-

visitation issues pertaining to C.A.A. It is undisputed that C.A.A. moved to Arkansas to live with Father prior to 2005 and remained there with him until they relocated to Texas in 2012. Mother admits in her brief that she resided in Mississippi in 2005. Based on the foregoing, there was clearly a period of time in 2005 when Father, Mother, and C.A.A. all lived outside of Tennessee. The official comments make it clear that Mother's claimed relocation back to Tennessee as the noncustodial parent did not reestablish the state's jurisdiction. Thus, the trial court correctly determined that Tennessee lost its exclusive, continuing jurisdiction. Moreover, the trial court held a hearing on the issue of subject matter jurisdiction on August 6, 2013. The court determined that Tennessee no longer had exclusive, continuing jurisdiction based on the evidence presented during that hearing. The record on appeal does not contain any transcript or statement of the evidence from the August 6, 2013 hearing. In the absence of a transcript or statement of the evidence, we must presume that the evidence presented at the hearing was sufficient to support the trial court's judgment. We therefore affirm the trial court's dismissal.

To the extent that Mother collaterally challenges the trial court's subject matter jurisdiction in the proceedings commenced by Father's June 2, 2003 modification petition, we find that there is insufficient evidence in the record to address her argument. As we previously stated, in the absence of a transcript or statement of the evidence we conclusively presume that the findings of fact made by the trial court are supported by the evidence and are correct. We therefore find Mother's argument to be without merit.

## IV. HOLDING

Based on the foregoing, we affirm the judgment of the trial court. The costs of this appeal are taxed to the appellant, Chandranita Michelle Ankton, and her surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE