

**FILED**

January 12, 2015

TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

Time: 12:00 PM

**TENNESSEE DIVISION OF WORKERS' COMPENSATION**
**WORKERS' COMPENSATION APPEALS BOARD**

| | | |
|---|---|---|
| Employee:  Kevin Jewell | ) | Docket No.  2014-05-0003 |
| | ) | |
| Employer:  Cobble Construction and | ) | State File No.  63150-2014 |
|                     Arcus Restoration | ) | |

In accordance with Rule 0800-02-22-.02(6), please find attached the Workers' Compensation Appeals Board's Order and Opinion Affirming and Remanding Interlocutory Order of Court of Workers' Compensation Claims in the referenced case.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Order and Opinion Affirming and Remanding Interlocutory Order of Court of Workers' Compensation Claims was sent to the following recipients by the following methods of service on this the 12th day of January, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| Kevin Jewell | | | | | X | quazykevin@yahoo.com |
| J. Eric Hennessee, Esq. | | | | | X | Eric.hennessee@mitchellattorneys.com |
| David Drobny, Esq. | | | | | X | ddrobny@manierherod.com |
| Joshua Davis Baker, Judge | | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | | X | Penny.Patterson-Shrum@tn.gov |

Matthew Salyer
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: Matthew.Salyer@tn.gov



# TENNESSEE DIVISION OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

**FILED**

**January 12, 2015**

TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

Time: 12:00 PM

Employee: Kevin Jewell )  Docket No. 2014-05-0003
                        )
Employer: Cobble Construction and )  State File No. 63150-2014
           Arcus Restoration )
                        )
Appeal from the Court of Workers' )
Compensation Claims )
Joshua Davis Baker, Judge )

---

**Affirmed and Remanded – January 12, 2015**

---

## ORDER AND OPINION AFFIRMING AND REMANDING INTERLOCUTORY ORDER OF COURT OF WORKERS' COMPENSATION CLAIMS

This interlocutory appeal involves a construction worker who injured his back lifting a granite slab while in the course and scope of his employment with Cobble Construction, a subcontractor on a residential construction project for which Arcus Restoration was the principal contractor. The subcontractor was uninsured for workers' compensation risks. The principal contractor and subcontractor denied the claim, asserting the employee was an independent contractor. Alternatively, they asserted the injury resulted from activity outside the scope of the employee's work duties. Following an expedited hearing, the trial court found that the employee was employed by the subcontractor; that the employee was injured while performing work in the course and scope of his employment with the subcontractor; that the employee is due medical benefits and temporary disability benefits for 29 days during which employee's doctor kept him out of work; and that the principal contractor is responsible for providing the benefits because the subcontractor does not have workers' compensation insurance. The subcontractor has appealed. Having carefully reviewed the record, we affirm the decision of the Court of Workers' Compensation Claims.

Judge David F. Hensley delivered the opinion of the Appeals Board, in which Judge Marshall L. Davidson, III, and Judge Timothy W. Conner, joined.

1

J. Eric Hennessee, Murfreesboro, Tennessee, for the employer-appellant, Cobble Construction

Kevin Jewell, LaVergne, Tennessee, employee-appellee, *pro se*

David M. Drobny, Nashville, Tennessee, for Arcus Restoration

**Factual and Procedural Background**

In a June 12, 2014 telephone conversation between Kevin Jewell ("Employee") and Chad Cobble, a representative of Cobble Construction, Employee was offered a full-time job at the hourly rate of $18.00. Employee asked what tools he needed and was told to bring painting tools. Employee began working for Cobble Construction on June 17, 2014. Over the next several weeks he performed work for Cobble Construction at various sites in the Nashville area. At times Employee worked alone, while at other times he worked with Chad Cobble or with other employees of Cobble Construction. Employee performed various work duties including helping build stair risers and treads, installing cabinets, reinstalling a sink, installing interior doors, installing a floor, and painting.

At the end of Employee's first week of work, June 20, 2014, Chad Cobble paid Employee with a personal check in the amount of $700.00. The check included a handwritten notation that it was for 38.5 hours. Over the next several weeks, Employee received similar personal checks for the work he performed. Each check included a handwritten notation for a number of hours.

On August 2, 2014, Employee was working for Cobble Construction at a residence in Brentwood, Tennessee. Arcus Restoration ("Arcus") was the primary or general contractor on the project. Employee alleges that in the afternoon of August 2, 2014, he went into the bathroom of the residence to move a slab of granite that was sitting on the edge of the bathtub and that his back began to burn when he attempted to move the slab. He described the slab as being approximately six inches wide and twelve feet long. According to the trial court's order, Employee testified that he attempted to paint a handrail that afternoon, but his back continued to burn. The following morning, Employee sent Chad Cobble a text message informing that he had been injured.

According to the trial court's order, Employee testified that he moved the granite slab because the homeowner expressed concern to him that the slab was blocking access to the bathtub. The trial court's order indicates that Employee stated that, with the assistance of another Cobble Construction employee, he had previously placed the slab in the area of the bathtub in response to Chad Cobble's request that he and another employee pick all of the items up off the floor so that floor finishers could perform their

2

work. Employee said that he felt some responsibility to move the granite slab because he had placed it near the bathtub. The trial court's order indicates Chad Cobble stated that he never asked Employee to move the slab and that it was not Employee's job to move the slab. According to the order, Chad Cobble testified that Employee knew he was not supposed to touch the granite slab. However, Chad Cobble did not contest Employee's assertion that Mr. Cobble instructed him to clear items from the floor so that floor finishers could perform their work.

In the days following the lifting incident and beginning on August 3, 2014, Chad Cobble and Employee exchanged numerous text messages including messages wherein Chad Cobble asked and expressed concern about Employee's back. The text messages included communications in which Employee told Chad Cobble that he had been to a doctor and that the doctor had given restrictions that prohibited heavy lifting. Employee's text messages also inquired about Cobble Construction's workers' compensation insurance coverage. Chad Cobble responded to one of the text messages stating that he was "exempt from workers comp." The last date of the text messages that were introduced into evidence was August 16, 2014, and a text on that date from Chad Cobble included the statement, "I guess [you] filed a claim with work comp on me [and] they called Arcus yesterday." The text continued: "I can't do anything for them anymore. One of the owners at Arcus called me chewing me out yesterday. I can't even get my check from them now." Employee was terminated on August 16, 2014.

On August 28, 2014, Cobble Construction filed both an Employer's First Report of Work Injury or Illness and a Notice of Denial of Claim for Compensation. The Notice of Denial stated the basis for denial as follows:

> Pursuant to TCA 50-6-102 (11)(D) Claimant does not meet the definition of an employee. Specifically, Mr. Cobble did not have the right to control the conduct of the work. Claimant was given a key to the house and was allowed to work when he could. Claimant offered his services as a painter to a number of other contractors. Claimant provided all of his own tools needed to paint. Claimant could have hired helpers if he so desired, but would have been paid the same.

On August 29, 2014, Employee was seen and evaluated by a medical provider at Tennessee Sports Medicine, P.C. The medical records of the August 29, 2014 visit were introduced as "Exhibit No. 1 Medical Records of Dr. Charles Kaelin." However, the four-page "Orthopedic Note" identifies the author as "Ko MD, Chae." A "Medical Record Certification" form of the Division of Workers' Compensation was included in Exhibit 1 certifying the records of Dr. Charles Kaelin to be true and accurate. The "History of Present Illness" included in the Orthopedic Note included the following:

3

[Employee] is a pleasant 46-year-old gentleman with low back pain for the past month. He was lifting up a granite countertop during work and felt low back pain. He has seen [an] urgent care physician a couple times and was given steroid as well as pain medication. He has not undergone physical therapy. He has had some bilateral lower extremity radicular symptoms. He does not have any red flags. Pain is mostly located in his low back.

The August 29, 2014 Orthopedic Note includes a diagnosis of lumbar radiculopathy and muscle spasm. It reflects that medication was prescribed and that physical therapy was ordered. Employee was instructed to return in six weeks for follow-up. A "Work Status" report included in Exhibit 1 states that Employee is to remain on restrictions of "[n]o bending or lifting over 20 lbs."

Exhibit 5 in the record included a "Work Status" report from Tennessee Sports Medicine, P.C., dated September 26, 2014, which indicated Employee was released to regular duty and noted Employee "is ordered to do 8 more sessions of physical therapy." The medical records introduced into evidence do not indicate whether Employee attended the physical therapy sessions. The medical records do not address medical causation beyond what is stated in the "History of Present Illness" set out above.

Following the expedited hearing, the trial court found that Chad Cobble offered Employee employment at the rate of $18.00 per hour; that the work to be performed was general construction work that was not limited to painting; that Employee suffered an injury to his back August 2, 2014, while attempting to lift a piece of granite at a job site; that Employee's weekly workers' compensation rate is $335.28, or $47.90 per day; and that Employee was terminated by Cobble Construction on August 16, 2014. Based on admissions of the parties, the trial court found that Cobble Construction did not have workers' compensation coverage in place. The trial court found that Arcus was the general contractor on the project on the date of Employee's injury and that Cobble Construction was a subcontractor of Arcus. Based upon these findings, the trial court ordered that Arcus provide Employee a panel of orthopedic specialists for treatment of his injury from which Employee could select a physician to serve as the authorized treating physician; that Arcus provide payment for all reasonable and necessary medical treatment provided by the physician selected from the panel; and that Arcus pay Employee back temporary total disability payments in the amount of $1,389.10 for 29 days of benefits. Cobble Construction timely filed an Expedited Hearing Notice of Appeal.

**Standard of Review**

The standard of review to be applied by the Appeals Board in reviewing a trial court's decision is statutorily mandated and limited in scope. Specifically, "[t]here shall

4

be a presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7) (2014). The trial court's decision must be upheld unless "the rights of the party seeking review have been prejudiced because findings, inferences, conclusions, or decisions of a workers' compensation judge:

    (A) Violate constitutional or statutory provisions;
    (B) Exceed the statutory authority of the workers' compensation judge;
    (C) Do not comply with lawful procedure;
    (D) Are arbitrary, capricious, characterized by abuse of discretion, or clearly unwarranted exercise of discretion; or
    (E) Are not supported by evidence that is both substantial and material in the light of the entire record.

Tenn. Code Ann. § 50-6-217(a)(2) (2014).

In applying the above standard, courts have construed substantial and material evidence to mean "such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration." *Clay County Manor, Inc. v. State of Tennessee*, 849 S.W.2d 755, 759 (Tenn. 1993) (*quoting Southern Railway Co. v. State Bd. of Equalization*, 682 S.W.2d 196, 199 (Tenn. 1984)). Like other courts applying the standard embodied in section 50-6-217(a)(2), the Appeals Board will not disturb the decision of the trial court absent the limited circumstances identified in the statute.

## Analysis
### A. Record on Appeal

The appellant bears the burden of showing that the evidence presented in the trial court preponderates against the trial court's findings. *Manufacturers Consol. Service v. Rodell*, 42 S.W.3d 846, 865 (Tenn. Ct. App. 2000) (*citing Coakley v. Daniels*, 840 S.W.2d 367, 370 (Tenn. Ct. App. 1992)). Likewise, the appellant has the burden to ensure that an adequate record is prepared on appeal. As the Supreme Court's Special Workers' Compensation Appeals Panel explained in *Vulcan Materials Co. v. Watson*, No. M2003-00975-WC-R3-CV, 2004 Tenn. LEXIS 451, at *6-7 (Tenn. Workers' Comp. Panel May 19, 2004) (*quoting Manufacturers Consol. Service*, 42 S.W.3d at 865):

The appellant has the duty of preparing a record that conveys a fair, accurate and complete account of the proceedings in the trial court with respect to the issues on appeal. Tenn. R. App. P. 24(b). We are provided with only the trial court's findings of facts and conclusions of law rendered from the bench and the exhibits introduced at the trial of this cause, which include three doctor's depositions. We do not have a record of the lay

5

testimony presented to the trial court. In the absence of an adequate record on appeal, this Court must presume the trial court's rulings were supported by sufficient evidence.

Including a transcript or statement of the evidence as part of the record on appeal promotes meaningful appellate review and, in turn, public confidence in the integrity and fairness of the process. As one court has explained, "[f]ull appellate consideration of a trial court's determination . . . is part of the process designed to achieve an accurate and just decision . . . ." *In re Adoption of J.D.W.*, No. M2000-00151-COA-R3-CV, 2000 Tenn. App. LEXIS 546, at *12 (Tenn. Ct. App. Aug. 16, 2000). "Without a transcript or a statement of the evidence, the appellate court cannot know what evidence was presented to the trial court, and there is no means by which we can evaluate the appellant's assertion that the evidence did not support the trial court's decision." *Britt v. Chambers*, No. W2006-00061-COA-R3-CV, 2007 Tenn. App. LEXIS 38, at *8 (Tenn. Ct. App. Jan. 25, 2007). When the review of a trial court's decision is accompanied by a presumption that the findings are correct, "it is essential that the appellate court be provided with a transcript of the trial proceedings or a statement of the evidence . . . ." *Id.* at *7. *See also Estate of Cockrill*, No. M2010-00663-COA-R3-CV, 2010 Tenn. App. LEXIS 754, at *11-12 (Tenn. Ct. App. Dec. 2, 2010) ("In cases where no transcript or statement of the evidence is filed, the appellate court is required to presume that the record, had it been properly preserved, would have supported the action of the trial court."); *Leek for Estate of Lovelace v. Powell*, 884 S.W.2d 118, 121 (Tenn. Ct. App. 1996) ("In the absence of a transcript or a statement of the evidence, we must conclusively presume that every fact admissible under the pleadings was found or should have been found favorably to the appellee."). In short, "[a]n incomplete appellate record is fatal to an appeal on the facts," *Piper v. Piper*, No. M2005-02541-COA-R3-CV, 2007 Tenn. App. LEXIS 70, at *11 (Tenn. Ct. App. Feb. 1, 2007), and a reviewing court "must conclusively presume that the evidence presented supported the facts as found by the trial court." *Whitesell v. Moore*, No. M2011-02745-COA-R3-CV, 2012 Tenn. App. LEXIS 894, at *10.

In the present case, as in *Vulcan Materials*, the Appeals Board was provided with no record of any testimony taken during the expedited hearing. No statement of the evidence was offered by the appellant and, under these circumstances, the Appeals Board will presume that the trial court's rulings were supported by sufficient evidence.

## B. Employee versus Independent Contractor

To recover workers' compensation benefits, the claimant must be an employee and not an independent contractor or a casual employee. *Bargery v. Obion Grain Co.*, 785 S.W.2d 118, 121 (Tenn. 1990). Determining whether an individual is characterized as an employee or an independent contractor for workers' compensation purposes requires a specialized factual analysis. *Masiers v. Arrow Transfer & Storage Co.*, 639 S.W.2d 654,

6

656-57 (Tenn. 1982) (*citing Barnes v. Nat'l Mortg. Co.*, 581 S.W.2d 957 (Tenn. 1979)). No single aspect of a work relationship is conclusive in making this determination, and in deciding whether a worker is an employee or independent contractor, "the trier of fact must examine all relevant factors and circumstances" of the relationship. *Boruff v. CNA Ins. Co.*, 795 S.W.2d 125, 127 (Tenn. 1990). The Tennessee Workers' Compensation Act requires that "[i]n a work relationship, in order to determine whether an individual is an 'employee,' or whether an individual is a 'subcontractor' or an 'independent contractor,' the following factors shall be considered:

(i)  The right to control the conduct of the work;
(ii)  The right of termination;
(iii)  The method of payment;
(iv)  The freedom to select and hire helpers;
(v)  The furnishing of tools and equipment;
(vi)  Self-scheduling of working hours; and
(vii)  The freedom to offer services to other entities."

Tenn. Code Ann. § 50-6-102(11)(D) (2014).

These factors are not absolutes that preclude examination of each work relationship as a whole and are no more than a means of analysis. *Masiers*, 639 S.W.2d at 656 (*citing Jackson Sawmill v. West*, 619 S.W.2d 105 (Tenn. 1981)). While no single factor is determinative, the Tennessee Supreme Court "has repeatedly emphasized the importance of the right to control, the relevant inquiry being whether the right existed, not whether it was exercised." *Galloway v. Memphis Drum Service*, 822 S.W.2d 584, 586 (Tenn. 1991). Once it is established that an employment relationship exists, "the burden is on the employer to prove the worker was an independent contractor rather than an employee." *Id.* Another factor that has gained significance is the right of termination. *Masiers*, 639 S.W.2d at 656 (*citing Wooten Transports, Inc. v. Hunter*, 535 S.W.2d 858 (Tenn. 1976)). "As noted in *Masiers* [citation omitted], 'the power of a party to a work contract to terminate the relationship at will is contrary to the full control of work activities usually enjoyed by an independent contractor.'" *Boruff*, 795 S.W.2d at 127.

In the instant case, the Expedited Hearing Order evidences that the trial court considered all of the above factors except the freedom to select and hire helpers. The trial court made findings with regard to each factor addressed. Specifically, the trial court found the following: (1) "Mr. Cobble controlled the work that [Employee] performed;" (2) Employee's "employment relationship with Cobble Construction was terminated by Mr. Cobble on August 16, 2014;" (3) the fact that Employee "was paid on a weekly basis and the fact that payment was based on number of hours worked rather than the completion of a specific job or project indicates an employer/employee relationship;" (4) Employee's "direct purchasing and provision of materials is more indicative of an employer/employee relationship than an independent contractor," and "weighs in favor of

7

a finding that [Employee] is an employee of Cobble Construction;" (5) "Mr. Cobble had sole responsibility for scheduling the work," but Employee "had control of the hours he worked;" and (6) Employee "was free to offer services to other entities if he wished to do so."

Having considered these factors, the trial court concluded that Employee "was an employee of Cobble Construction." Tennessee Code Annotated section 50-6-239(c)(7) (2014) mandates that we presume the trial court's findings and conclusions to be correct, unless the preponderance of the evidence is otherwise. Without a transcript or a statement of the evidence, we must presume the trial court's rulings were supported by sufficient evidence. *See Manufacturers Consol. Service v. Rodell,* 42 S.W.3d 846, 865 (Tenn. Ct. App. 2000).

### C. Whether Employee's Injury Occurred in the Course and Scope of His Employment

To be compensable, an injury must arise primarily out of and occur in the course and scope of the employment. Tenn. Code Ann. § 50-6-102(13) (2014). "Injury" and "personal injury" are defined in the Workers' Compensation Act to "mean an injury by accident . . . arising primarily out of and in the course and scope of employment, that causes death, disablement or the need for medical treatment of the employee." *Id.* In order for an injury be accidental, it must be "caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence . . . ." Tenn. Code Ann. § 50-6-102(13)(A).

For injury dates on or after July 1, 2014, "this chapter shall not be remedially or liberally construed but shall be construed fairly, impartially, and in accordance with basic principles of statutory construction." Tenn. Code Ann. § 50-6-116 (2014). An employee has the burden of proving each element of his or her workers' compensation claim by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6) (2014); *Elmore v. Travelers Ins. Co.,* 824 S.W.2d 541, 543 (Tenn. 1992).

The Expedited Hearing Order identifies three witnesses who testified at the expedited hearing. Based in part on the testimony of Employee and Chad Cobble, the trial court found that moving the granite slab "fell directly in-line with [Employee's] established practice of performing general construction work for the company," and that the work performed by Employee was general construction work that was not limited to painting. The trial court found that "on August 2, 2014, [Employee] suffered an injury to his back while attempting to lift a piece of granite at a job site." As with the issue concerning whether Employee was an independent contractor, we are required by statute to presume that the trial court's findings and conclusions are correct, unless the preponderance of the evidence is otherwise, Tenn. Code Ann. § 50-6-239(c)(7), and without a transcript or a statement of the evidence, we must presume that the trial court's

rulings were supported by sufficient evidence. *Manufacturers Consol. Service,* 42 S.W.3d at 865.

### D. Award of Medical and Temporary Disability Benefits

An employer is required to furnish "free of charge to the employee, such medical and surgical treatment . . . made reasonably necessary by accident as defined in this chapter." Tenn. Code Ann. § 50-6-204(a)(1)(A) (2014). The trial court found that Employee suffered an injury to his back and that he timely reported the incident to Chad Cobble. Cobble Construction did not provide a panel of physicians to Employee or otherwise provide medical care to Employee, effectively forcing Employee to seek treatment on his own. Employee sought medical treatment and on August 29, 2014, he was diagnosed with "lumbar radiculopathy [and] muscle spasm." The medical records introduced into evidence state that Employee needs further physical therapy and that he may need additional imaging studies. Based upon the testimony of the witnesses and the medical records introduced into evidence, the trial court concluded that Employee made the requisite showing to require a panel of physicians to be provided from which Employee is entitled to select a physician to serve as the authorized treating physician for such medical care as is reasonably necessary as a result of the work injury. The trial court's conclusion is presumed to be correct, Tenn. Code Ann. § 50-6-239(c)(7), and without a transcript or a statement of the evidence, the preponderance of the evidence cannot be otherwise than as found by the trial court; and we presume that the trial court's rulings were supported by sufficient evidence. *See Manufacturers Consol. Service,* 42 S.W.3d at 865.

To establish entitlement to temporary total disability benefits as contemplated in Tennessee Code Annotated section 50-6-207(1), an employee must show that (1) he or she was totally disabled from work as a result of a compensable injury; (2) that a causal connection exists between the injury and the employee's inability to work; and (3) the duration of the period of the employee's disability. *Gray v. Cullom Mach., Tool & Die, Inc.,* 152 S.W.3d 439, 443 (Tenn. 2004). Entitlement to temporary total disability benefits ends whenever an employee is able to return to work or reaches maximum medical improvement. *Foreman v. Automatic Systems, Inc.,* 272 S.W.3d 560, 575 (Tenn. 2008); *Roberson v. Loretto Casket Co.,* 722 S.W.2d 380, 383 (Tenn. 1986); *Simpson v. Satterfield,* 564 S.W.2d 953, 955 (Tenn. 1978). Temporary partial disability is a distinct category of vocational disability separate from temporary total disability, *see* Tenn. Code Ann. § 50-6-207(1)-(2), which arises when the temporary disability is not total. "Temporary partial disability refers to the time, if any, during which the injured employee is able to resume some gainful employment but has not reached maximum recovery." *Williams v. Saturn Corp.,* No. M2004-01215-WC-R3-CV, 2005 Tenn. LEXIS 1032, at *6 (Tenn. Workers' Comp. Panel Nov. 15, 2005). Temporary partial disability has been referred to as the time during which an injured employee is able to resume work

before reaching maximum medical improvement. *Wilkins v. Kellogg Co.*, 48 S.W.3d 148, 151 (Tenn. 2001) (superseded by statute as to the manner of calculating temporary partial disability as stated in *Williams*, 2005 Tenn. LEXIS 1032, at \*8, n.1).

When Employee sought medical care August 29, 2014, a "Work Status" record was provided that restricted Employee from "bending or lifting over 20 lbs." The trial court found that these restrictions were in place from August 29 to September 26, 2014, a period of twenty-nine days following Employee's termination. The trial court concluded that Employee is entitled to receive back temporary disability benefits for this twenty-nine-day period at a weekly compensation rate of $335.28 or $47.90 per day, and the trial court ordered that Employee be paid "back temporary total disability in the amount of $1,389.10." Whether the temporary disability benefits should have been classified as total or partial does not alter the amount of those benefits under the facts as found by the trial court or the period during which Employee is entitled to such benefits. We apply a presumption that the findings and conclusions of the trial court are correct, Tenn. Code Ann. § 50-6-239(c)(7) (2014), and without a transcript or statement of the evidence approved by the trial court we presume that the trial court's findings were supported by sufficient evidence. *See Manufactures Consol. Service*, 42 S.W.3d at 865.

### E. Principal Contractor's Liability

Tennessee Code Annotated section 50-6-113(a) (2014) provides that a principal contractor is liable for compensation to any employee injured while in the employ of any subcontractor to the same extent as the immediate employer:

> A principal contractor, intermediate contractor or subcontractor shall be liable for compensation to any employee injured while in the employ of any of the subcontractors of the principal contractor, intermediate contractor or subcontractor and engaged upon the subject matter of the contract to the same extent as the immediate employer.

Tenn. Code Ann. § 50-5-113(a) (2014).

The trial court found that Arcus was the principle contractor on the project on which Employee was working on the date Employee was injured. Based upon party admissions, the trial court found that Cobble Construction did not have workers' compensation insurance in effect at the time. The trial court accordingly concluded that Arcus is liable for the compensation to Employee pursuant to Tennessee Code Annotated section 50-6-113(a) to the same extent as Cobble Construction. These findings and the trial court's conclusion are entitled to the statutory presumption of correctness, Tenn. Code Ann. § 50-6-239(c)(7), and without a transcript or a statement of the evidence we presume that the trial court's ruling was supported by sufficient evidence. *See Manufactures Consol. Service*, 42 S.W.3d at 865.

## Conclusion

For the foregoing reasons, we hold that the evidence does not preponderate against the trial court's findings and conclusions (1) that Employee was an employee of Cobble Construction on August 2, 2014; (2) that Employee sustained an injury by accident occurring in the course and scope of his employment with Cobble Construction on August 2, 2014; (3) that Employee is entitled to the medical benefits specified in the trial court's December 15, 2014 Expedited Hearing Order; (4) that Employee is entitled to an award of twenty-nine days of temporary disability benefits for the period August 29, 2014 through September 26, 2014 in the total amount of $1,389.10; and (5) that Arcus was the general contractor and engaged upon the project that Employee was working on for the subcontractor, Cobble Construction, when Employee was injured August 2, 2014, such that Arcus is liable for the benefits due Employee to the same extent as Cobble Construction. Additionally, we find that the trial court's decision does not prejudice the rights of the parties or otherwise violate the standards set forth in Tennessee Code Annotated section 50-6-217(a)(2). Accordingly, the trial court's decision is affirmed and the case is remanded for any further proceedings that may be necessary.

David F. Hensley, Judge
Workers' Compensation Appeals Board

11